JOHN W. EAGAN *v.* CENTRAL VERMONT RAILWAY COMPANY.

January Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed May 7, 1908.

*Railroads—Waters and Water Courses—Construction of Culvert—Action for Damages—Extraordinary Flood—Act of God—Liability—Prior Extraordinary Flood—Effect.*

There was no liability for damages to a landowner due to the insufficiency of a railroad culvert to carry off water collected in a brook as the result of an extraordinary flood, exceeding any previously known, with the possible exception of one instance more than 30 years before, since the sole proximate cause of the damage was an act of God.

The company's liability is not affected by the fact that an original culvert, somewhat larger than the one in question, was insufficient to carry off the water of an extraordinary flood that occurred more than 30 years before.

CASE for negligence. Plea, the general issue. Trial by jury at the March Term, 1907, Washington County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*C. S. Palmer,* and *Plumley & Plumley* for the defendant.

This defendant is not chargeable with any negligent acts of its predecessor in the construction of embankment or culvert without notice of such defect, and request to remedy the same. *Penruddock's case,* Coke's Rep. Abrdg. 176; *Peoria & Pekin Ry. Co.* v. *Barton,* 38 Ill. Appellate Ct. 38; *Pillsbury* v. *Moore,* 44 Me. 154; *Woodman* v. *Tufts,* 9 N. H. 88; *West* v. *L. etc. R. R. Co.,* 8 Bush. (Ky.) 404; *Picket* v. *Condon,* 18 Md. 412; *Johnson* v. *Lewis,* 13 Conn. 303; *Dodge* v. *Stacy et al.,* 39 Vt. 558; *Cooley on Torts* (2nd Ed.) 728; *Phila. etc. R. R. Co.* v. *Smith,* 64 Fed. 679.

The destruction of plaintiff's property by an unprecedented flood was not a consequence that the defendant could reasonably expect; against such consequences he was not by law bound to provide. The flood was the sole proximate cause of the injury. *Corbin* v. *Grand Trunk Ry.*, 78 Vt. 458; 14 Texas Civil Appeals 435; *Morris* v. *Receiever of R. & D. Co.*, 65 Fed. 584; *Lapham* v. *Curtis*, 5 Vt. 371; *Cent. Trust Co.* v. *Wabash R. R.*, 57 Fed. 441; *K. C. etc.* v. *Smith*, 27 L. R. A. 762; *Toledo etc. Co.* v. *Huler*, 50 Ill. 325; *Ilfrey* v. *Sabine etc. Co.*, 76 Tex. 63; *Bruch* v. *St. Louis*, 161 Mo. 433; *Hession* v. *Wilmington*, 27 Atl. 830; *Treichel* v. *G. N. Ry. Co.*, 80 Minn. 96; *Rucker* v. *Mfg. Co.*, 54 Ga. 84; *Gray* v. *Harris*, 107 Mass. 492, 7 Am. Rep. 61; *Sullen* v. *Chicago etc. R. Co.*, 74 Iowa 659; *Nichols* v. *Maisland*, L. R. A. 2 Exch. Div. 1; *Ryland* v. *Fletcher*, Law Rep. 3 H. L. 330; *Ohio etc. Ry. Co.* v. *Ramney*, 139 Ill. 9; *Gray* v. *Harris*, 107 Mass. 492; *Mayor of N. Y.* v. *Bailey*, 2 Denio 433.

*Senter & Senter* for the plaintiff.

In taking land by a railroad company, the award of damages never includes compensation for damages resulting from company's future negligence. *Hatch etc.* v. *Vt. C. R. R.*, 25 Vt. 69; *Waterman* v. *Conn. & Pass. R. R.*, 30 Vt. 614; *Clark* v. *Vt. & Can. R. R.*, 28 Vt. 106; *Hunt* v. *Iowa Cent. R. R.*, 41 Am. St. Rep. 473.

When, as in this case, the structure is permanent in its character, and its construction and continuance are not necessarily injurious, but may or may not be, depending on future events, the Statute of Limitations begins to run from the happening of the injury complained of. *St. Louis etc. R. R.* v. *Biggs*, 20 Am. St. Rep. 174; 1 Wood on Limitations, §180; *Troy* v. *Cheshire R. R.*, 23 N. H. 25; Wood's Law of Nuisances, §865; *Staples* v. *Spring*, 10 Mass. 74.

WATSON, J. The plaintiff seeks to recover damages sustained by him on the 15th day of June, 1902, by the alleged reason of an insufficient culvert through a high railroad fill or embankment, and over the Eagan brook, so-called, in the town of Middlesex, whereby the water of the brook was obstructed and

thrown back upon his land and buildings, totally destroying some and injuring other of his property.

It appears that in the construction of the roadbed of the Vermont Central Railroad (the defendant's grantors) about the year 1848, a deep fill or embankment approximately 885 feet long and from sixteen to twenty-five feet high was made across the valley through which the stream in question flows, a few rods south of where the plaintiff subsequently built his mill. The stream is about five miles long, runs southerly through a valley with precipitous banks, drains an area of about twelve square miles of hilly and mountainous country, is liable to very sudden rise of water by reason of the topography of the country which it drains, and empties into the Winooski river about 150 rods southerly of this embankment; that when the embankment was made an under-grade pass was built near the west end for the public highway, and some distance further east a stone culvert was made spanning the Eagan brook. The plaintiff's evidence tended to show that when made the culvert was of certain dimensions, but that in 1893 it had become so out of repair that it was torn down and a new one built having less capacity. It further appeared that at the time in question the plaintiff was in possession of the premises where the damage occurred northerly and up the hill from the culvert under a lease for ninety-nine years, had built a saw and grist mill and other buildings thereon some thirty or forty rods from the embankment, and had a large quantity of lumber piled on the land near and alongside of the stream; that soon after the heavy rains began on the night in question, the water came down the stream in such large quantities that the culvert was of insufficient capacity for it to pass through, by reason whereof the water was dammed up, and overflowed the plaintiff's lands and premises to a great depth, the pressure being so great as later to cause the embankment to give way, etc., resulting in the great damage to the plaintiff's property.

At the close of all the evidence the defendant moved that a verdict be directed in its favor for that, among other things, the undisputed evidence showed the rainfall and the flood caused thereby in the Eagan brook at the time in question were unprecedented and that the damages suffered by the plaintiff were the result of an act of God and not of any negligence of the de-

fendant.  The case will be considered on the exception to the overruling of the motion on this graund.

From the undisputed evidence it appears that in the evening of June 15, in the territory of the watershed of the Eagan brook, the rain fell in torrents,—a cloud-burst,—by reason whereof the volume of water running in that stream was so increased as not only to overflow its banks, but to spread out and run in currents on and over adjoining fields and meadows some of which were washed away leaving a bed of gravel and boulders, and some were covered with sand, gravel, and boulders washed thereon, the boulders varying in size from small ones to those three or four feet across; that the public highway running parallel with the brook was washed away in many places, some of which for many rods became and hitherto has been the principal channel of the stream.  Most if not all of the bridges over the stream were carried away, and in some instances their abutments also.  Many trees, varying in size from small to large ones, were uprooted, and large stones were moved from their beds, and together carried down stream a greater or less distance.  The evidence does not show the amount of water usually running in that brook, but some idea regarding it is gathered from the evidence showing that about the time of the trial in the lower court (which began April 30, and lasted nine or ten days), by measurements made, the amount of water was found to be twenty square feet, that is, equivalent to a stream twenty feet wide and one foot deep.  The uncontradicted evidence showed that by measurements made "of the opening to the high water traces" about 108 rods, and at other places further up the stream from the defendant's culvert, the volume of water running at the time of the flood in question was thirty-nine and one-half times that amount.  The evidence given by witnesses living in that general locality was nearly all to the same effect that they never before saw it rain so hard, nor a flood there of such magnitude.  One witness eighty years old, who had lived in that vicinity for forty years, testified to remembering the flood in October, 1869, and that the water was then higher in Eagan brook than he ever saw it before or since.  There was no evidence, however, that he saw it at the time in controversy.  Another witness called by plaintiff gave evidence in effect that he had lived just easterly of where the plaintiff's

mill was,—his land adjoined that leased by plaintiff,—for forty-seven years, saw the flood of 1869, also the one of June 15, 1902; that in each instance the water from that stream spread out on his land above the railroad fill, though more on the latter occasion. But when asked which of the two floods was the larger in that vicinity, he answered, "I can't tell —it would be hard telling, I think." The testimony of all other witnesses giving evidence in comparison shows that on the occasion in 1902, the water was higher and the resulting damages greater than in 1869.

We think it clear that the damages suffered by the plaintiff were proximately due, directly and exclusively, to natural causes without human intervention, which could not have been prevented by any amount of foresight, pains, and care reasonably to be expected; in other words the sole proximate cause of the injury was an act of God for which the defendant is not responsible. *Forward* v. *Pittard,* 1 T. R. 27, 1 Eng. Rul. Cas. 216; *Nugent* v. *Smith,* 1 C. P. D. 19, 423, 1 Eng. Rul. Cas. 218; *Pittsburg, Fort Wayne & Chicago Ry. Co.* v. *Gilleland,* 56 Penn. St. 445; *Baltimore & Ohio R. R. Co.* v. *Sulphur Springs Independent School District,* 96 Penn. St. 65, 42 Am. Rep. 529. The last two cases cited are much in point. In the former the plaintiff alleged that the former proprietors of the railroad in order to support their roadbed over a small run near the premises of the plaintiff, constructed a culvert which was insufficient to give a free outlet to all the water of the run in time of heavy floods, of which the defendant had notice; by reason whereof in times of heavy rains and floods the waters were stopped and backed up to the injury of the plaintiff's premises. In reversing the judgment below for the plaintiff, the court said:

"The stream, though small, must find vent, or overflow the adjacent land and undermine the railroad. Its size, the character of its channel, and the declivity of the circumjacent territory which forms the watershed, indicated the probable quantity of water to be passed through. Proper engineering skill should observe these circumstances, and supply the means of avoiding the injury which would result from locking up the natural flow, or obstructing its passage so as to cause a reflux in times of ordinary high water. Beyond this, prudent circumspection cannot be expected to look, and there is therefore no

liability for extraordinary floods, those unexpected visitations, whose comings are not foreshadowed by the usual course of nature, and must be laid to the account of Providence, whose dealings, though they may afflict wrong no one.'' The doctrine there laid down was followed in the later case cited, where the action was to recover damages to a schoolhouse caused by the bursting of a culvert constructed by the railroad company; and in which it was held that a railroad company in constructing its road and works is bound to bring to their execution the engineering knowledge and skill ordinarily known and practiced in such works; but that there is no liability on the part of a railroad company for not constructing a culvert so as to pass extraordinary floods. To the same effect is *Emery* v. *Raleigh & Gaston R. R. Co.*, 102 N. C. 209, 11 Am. St. Rep. 727.

The fact that the evidence shows that in the fall of 1869 there was a storm which so raised the stream that the original culvert was insufficient for the water to pass through and that the land in question now leased by the plaintiff was then flooded, can make no difference with the result. For the undisputed evidence shows the flood at that time to have been of the same extraordinary character; consequently the incapacity of the culvert on that occasion had no tendency to show that the culvert built in 1893 was insufficient in times of ordinary high water, and though constructed with knowledge of the extraordinary high water in 1869, nothing more was required. *Norris* v. *Savannah etc. Ry. Co.*, 23 Florida 182, 11 Am. St. Rep. 355.

It follows that a verdict should have been directed for the defendant on the ground named. Our determination of this question is such as to render consideration of the other questions raised unnecessary.

*Judgment reversed, and judgment for the defendant to recover its costs.*