LYON, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. P. RY. CO. ET AL., APPELLANTS.

(No. 3,062.)

(Submitted January 20, 1912.  Decided February 16, 1912.)

[121 Pac. 886.]

*Waters and Watercourses—Flooding Lands—Defenses—Act of God—Erroneous Instruction—Measure of Damages—Railroads—Construction Work—Custom—Evidence.*

Waters and Watercourses—Flooding Land—Act of God—Erroneous Instruction.
1.  In an action against a railroad company for negligence in making an excavation near a river without constructing a sufficient embankment to prevent overflows, an instruction which, after defining an act of God, stated that a person is not liable for injuries resulting therefrom, "provided reasonable and ordinary care is exercised to guard against such occurrences," was erroneous, since a person is not bound to anticipate or guard against an act of God.

Same—Act of God and Negligence as Concurring Causes.
2.  If an act of God alone would not have produced the injury complained of, but plaintiff's loss was made possible by reason of a prior, coincident or subsequent negligent act of the defendant, the latter is liable because his act is *causa sine qua non.*

Same—Construction Work—Custom—Evidence.
3.  Proof that the work of constructing a railroad along a watercourse was done in the customary manner does not alone disprove negligence; there must be proof that such custom was the custom of ordinarily prudent and careful men.

Same—Measure of Damages—Instruction.
4.  Instruction on measure of damages to land by flooding thereof, reviewed and *held* not objectionable.

*Appeal from District Court, Granite County; Geo. B. Winston, Judge.*

ACTION by Ella F. Lyon against the Chicago, Milwaukee and St. Paul Railway Company of Montana and others.  From a judgment for plaintiff and an order denying a new trial, defendants appeal.  Reversed and remanded.

*Mr. H. H. Field, Mr. Geo. W. Korte,* of the bar of Seattle, and *Mr. H. C. Stiff,* submitted an original and a reply brief, in behalf of Appellants.  *Mr. Korte* argued the cause orally.

It is our contention that the law laid down by the trial court is not the law which governs cases involving the original right to construct works with its attendant anticipatory degree of care. such as would arise in the case at bar. The rule of law declared by it is principally that imposed upon common carriers in the discharge of their absolute duties with reference to passengers and freight. This rule is one of absolute liability where the resulting damage could have been prevented, had the carrier not been negligent in delaying the operation of its train. Liability is imposed regardless of whether the damage was caused by an ordinary or extraordinary flood, or act of God. But if the superior force would have produced the same damage, whether the carrier had been negligent or not, its negligence is not deemed the cause of the injury and there is no liability. (Shearman & Redfield on Negligence, 4th ed., sec. 39; *Wald* v. *Pittsburgh etc. R. Co.,* 162 Ill. 5⁴5, 53 Am. St. Rep. 332, 35 L. R. A. 356, 44 N. E. 889.) The rule, however, has no room whatever in a case where original construction work is carried on and where the only duty imposed upon the engineers in charge is to foresee not extraordinary floods but ordinary floods. No culpable act can possibly be committed except in failing to foresee the ordinary flood waters. For, if the flood was extraordinary, as extraordinary was defined by the trial court, its force was irresistible; it required no additional force from the hand of man to make it irresistible, and no amount of foresight could have known of its coming.

The following cases bear out our complaint that where the court defines an act of God to be an extraordinary flood whose magnitude and destructiveness could not be prevented by ordinary foresight, and where the charge of negligence is confined to failing to foresee such a flood, it is error to give an instruction which in terms tells the jury that, "if the leaving of the berme concurred with that which could not be foreseen, we were liable and could not plead the severity of the flood unless the damage would not have occurred if we had exercised reasonable care in the maintenance of the berme"; for the reasonable

care in the construction and maintenance of the berme to be exercised by appellant was only in foreseeing the ordinary flood waters of Hellgate river and not the acts of God or the extraordinary flood waters. The moment the flood became an act of God, that very moment ended every duty imposed upon appellant by law. (*Coleman* v. *Railway Co.,* 36 Mo. App. 476; *Polack* v. *Pioche,* 35 Cal. 416, 95 Am. Dec. 115; *Baltimore & O. R. R. Co.* v. *Sulphur Spring School District,* 96 Pa. 65, 42 Am. Rep. 529, 2 Am. & Eng. Ry. Cas. 166; *Kansas C. Ry.* v. *Williams,* 3 Ind. Ter. 352, 58 S. W. 570, 19 Am. & Eng. Ry. Cas., n. s., 361; *American Locomotive Co.* v. *Hoffman,* 105 Va. 343, 8 Ann. Cas. 773, 6 L. R. A., n. s., 252, 54 S. E. 25; *Eagan* v. *Central Vt. Ry. Co.,* 81 Vt. 141, 130 Am. St. Rep. 1031, 16 L. R. A., n. s., 928, 69 Atl. 732; *Emry* v. *Raleigh & G. R. Co.,* 102 N. C. 209, 11 Am. St. Rep. 727, 9 S. E. 139; *Campbell* v. *Bear River Min. Co.,* 35 Cal. 679; *M. K. & T. Ry. Co.* v. *Bell* (Tex. Civ. App.), 93 S. W. 198.) Such tortious cases as *Mulrone* v. *Marshall,* 35 Mont. 238, 88 Pac. 797, as well as the carrier cases above referred to, where unprecedented floods are involved, rest upon the principle of law that if the act of God, with which the negligent act of defendants concurred, could have been avoided by warning in time of its approach the defendants are liable, while the cases we are about to cite clearly hold there cannot be a co-operative cause or a concurrent act with an act of God which could not be foreseen. Such flood cases as the one at bar rest upon the principle that only those floods which can be foreseen can be avoided. Hence, in order to avoid we must have some knowledge, for without knowledge there can be no co-operation, concurrence or contribution. (See *Pinkerton* v. *Railway Co.,* 117 Mo. App. 288, 93 S. W. 849; *Wald* v. *Railway Co., supra; Long* v. *Railway Co.,* 147 Pa. 343, 30 Am. St. Rep. 732, 14 L. R. A. 741, 23 Atl. 459; *Elam* v. *Railway Co.* (Mo. App.), 93 S. W. 851.)

The burden of proving that appellant knew, or by the exercise of reasonable care might have known, of the coming of the flood of 1908 was upon respondent. (See *Elam* v. *Railway Co., supra; Railway Co.* v. *Reeves,* 10 Wall. (U. S.) 176, 19 L. Ed.

909; *Long* v. *Railway Co., supra; Railway Co.* v. *Huffman,* 36 Tex. Civ. App. 307, 81 S. W. 537.) Appellant showed the cause of the damage to be an unknown quantity of water from three to five feet in depth, produced by the hand of God, which no man could have foreseen or calculated against. This showing elimi- nated the berme and with it disappeared the *prima facie* showing of respondent that it was negligently allowed to be created; for the rule of law is, that if the superior force would have produced the same damage, appellant's negligence is not deemed the cause of the injury. The negligence, if any has been shown, is exon- erated, because the damage actually caused would have been suffered whether or not appellant had its railroad in existence. (*Railway Co.* v. *Reeves, supra; Railway Co.* v. *Williams,* 3 Ind. Ter. 352, 58 S. W. 570, 19 Am. & Eng. Ry. Cas., n. s., 361; Shear- man & Redfield on Negligence, 4th ed., sec. 39; *Wald* v. *Railway Co., Long* v. *Railway Co., Baltimore & O. Ry. Co.* v. *Sulphur Spring etc. Dist., Eagan* v. *Railway Co., supra.*)

The authorities hold that evidence of recurring extraordinary floods is not proof that the flood in question was not extraor- dinary and is not evidence that defendant is liable because a flood occurred which was like it or greater than it. (*Eagan* v. *Railway Co., supra; Norris* v. *Railway Co.,* 23 Fla. 182, 11 Am. St. Rep. 355, 1 South. 475; *Central Trust Co.* v. *Railway Co.,* 57 Fed. 441; *Railway Co.* v. *Gilliland,* 56 Pa. 445, 94 Am. Dec. 98; *Inhabitants of Palmyra* v. *Company,* 99 Me. 134, 58 Atl. 674; *People* v. *Company,* 22 Ill. App. 159; *Garfield* v. *Ontario,* 22 Ont. App. Rep. 128.)

The court erred in allowing witnesses to testify to market values based solely upon the net income from the land. The true rule as to the damage for which the law compels compensation is what a stranger would pay plaintiff for her land on the market. The authorities supporting our contention are as follows: *Rail- way Co.* v. *Galgiani,* 49 Cal. 140; *De Boul* v. *Railway Co.,* 111 Ill. 499; *Hamory* v. *Railway Co.,* 222 Pa. 631, 72 Atl. 229; *Burt* v. *Wigglesworth,* 117 Mass. 302; *Pittsburg & W. Railway* v. *Patterson,* 107 Pa. 461.

In behalf of Respondent, *Messrs. Walsh & Nolan* submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

The decisions of this court on the subject "act of God" leave no room for doubt as to the correctness of the instructions which are assailed by appellant. In the case of *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70, this court said: "We think instruction No. 6, given by the court, is not open to any objection made to it in the trial court. In effect this instruction told the jury that if the injury to plaintiff's property was occasioned by a combination of, first, negligence on the part of the defendant, and, second, an unprecedented flood, or, in other words, an act of God, then the plaintiff would still be entitled to recover if the negligence of the defendant was a proximate cause of the injury. No doubt had the defendant requested it, the trial court would have defined 'proximate cause' in the language of this court in *Mize* v. *Rocky Mountain Bell Tel. Co.,* above. The instruction correctly states the law as declared by this court in the case of *Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130, *Mulrone* v. *Marshall,* 35 Mont. 238, 88 Pac. 797, and *Birsch* v. *Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940." The instructions under review went beyond the doctrine of these cases and announced a rule much more favorable to appellants by declaring that no recovery could be had unless the negligent act complained of occasioned the injury.

It is claimed that the case should be reversed because the estimate of the witnesses as to the value of the land destroyed is based on what the land was capable of producing rather than on its salable and market price. Four of the cases cited by appellant have no application, and the fifth (*Railway Co.* v. *Galgiani,* 49 Cal. 140) has so only in a remote way. The witnesses in question were competent to testify as to the value of this land. They knew the land, they were farmers, and, outside of the respondent, they owned land in the vicinity of where this land was. They were fully qualified to testify as to the value of this land, and in chief they gave the land a certain value. Upon cross-examination it appears that no lands of like character have

been sold, and, under the tactful cross-examination, the witnesses were forced to say that in fixing the value as they did, they considered its revenue producing properties. We submit that these features did not render the valuation so made incompetent. (See *Norfolk & Western Ry. Co.* v. *Davis,* 58 W. Va. 620, 52 S. E. 725; 15 Cyc. 724; *Cochrane* v. *Commonwealth,* 175 Mass. 299, 78 Am. St. Rep. 491, 56 N. E. 610; *Burlington & M. R. R. R.* v. *Campbell,* 14 Colo. App. 141, 59 Pac. 425.) As sustaining our contention as to the admissibility of this evidence, we cite the following cases: *Schmidt* v. *Beiseker* (N. D.), 120 N. W. 1096; *Anderson* v. *C. B. & Q. R. Co.,* 84 Neb. 311, 133 Am. St. Rep. 626, 120 N. W. 1114; *U. P. Ry. Co.* v. *Lucas,* 136 Fed. 374, 69 C. C. A. 218; *Cochran* v. *Missouri, K. & T. Ry. Co.,* 94 Mo. App. 469, 68 S. W. 367; *Spring Valley Waterworks* v. *Drinkhouse,* 92 Cal. 528, 28 Pac. 681; *McKinney* v. *Nashville,* 102 Tenn. 131, 73 Am. St. Rep. 859, 52 S. W. 781; *Holland* v. *Huston,* 20 Mont. 84, 49 Pac. 390; *Emerson* v. *Bigler,* 21 Mont. 200, 53 Pac. 621; *Porter* v. *Hawkins,* 27 Mont. 486, 71 Pac. 664; *Yellowstone Park R. R. Co.* v. *Bridger Coal Co.,* 34 Mont. 545, 115 Am. St. Rep. 546, 9 Ann. Cas. 470, 87 Pac. 963; *Helena Power Transmission Co.* v. *McLean,* 38 Mont. 388, 99 Pac. 1061.

When the damage item is entirely independent of the question of liability, and where for any reason, through error in instructions or in the admissibility or rejection of evidence regarding the damage item, error has been committed, a reversal may be ordered limiting the hearing upon the retrial to the question of damages only. (*Smith* v. *Whittlesey,* 79 Conn. 189, 7 Ann. Cas. 114, 63 Atl. 1085; *Marshall* v. *Dalton Paper Mills,* 74 Atl. 108; *Farrar* v. *Wheeler,* 145 Fed. 482, 75 C. C. A. 386; *Rushing* v. *Seaboard Air Line Ry. Co.,* 149 N. C. 161, 62 S. E. 890; *Wilkie* v. *Raleigh & C. F. R. Co.,* 128 N. C. 113, 38 S. E. 289; *Powell* v. *Augusta & S. R. Co.,* 77 Ga. 192, 3 S. E. 757; *Richmond* v. *Ames,* 164 Mass. 467, 41 N. E. 671.) This authority is plenarily given by section 6253, Revised Codes, which provides that the supreme court may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be

entered, or direct a new trial or further proceedings to be had. (*Osmers* v. *Furey,* 32 Mont. 581, 81 Pac. 345; *Haggerty Bros.* v. *Lash & Shaughnessy,* 34 Mont. 518, 87 Pac. 907.)

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action charges that on the third day of June, 1908, and for a long time prior thereto, the defendants were engaged in the construction of a railroad grade and road-bed through the county of Granite, and through and adjacent to the premises of the plaintiff; that they constructed said roadbed and grade close to the Hellgate river, and in so constructing the same at and near the premises of the plaintiff they "negligently made and caused to be made an excavation and cut [hereafter called a 'borrow pit'] close to said river, and to a depth below the natural bed of said river, and negligently removed and caused to be removed from said cut and excavation material for their roadbed without permitting an embankment of sufficient size or strength to remain, so that said river would stay in its natural channel, by reason whereof, on or about the third day of June, 1908, the said river left its natural channel, and by reason of the insufficiency of said embankment the same was washed away by said river so leaving its natural channel, and the water of said river flowed through the aforesaid cut to and upon the premises of plaintiff, flooding said premises and depositing thereon large quantities of gravel and sand," destroying her crops and filling up her ditches, etc., to her damage in the sum of $8,800. The defendants answered separately, to the effect (1) that they were not guilty of the alleged acts of negligence complained of; (2) that plaintiff was guilty of contributory negligence in failure to use due care in the construction of her ditches; and (3) that the alleged damages were the result of "an unusual, excessive, and unprecedented rainfall and flood which no care, caution, or human foresight could have prevented," to-wit, of what is commonly termed an "act of God." These affirmative allegations were put in issue by a reply. The cause was tried to the district court of Granite county sitting with a jury. A verdict for the

plaintiff in the sum of $2,000 was returned. From a judgment on the verdict, and also from an order denying a new trial, the defendants have appealed.

The record contains over 800 printed pages of evidence. After patiently reading the same, we conclude as follows:

1. Whether the embankment (called in the testimony a "berme") was negligently allowed to remain in the condition in which it existed during the first three to five days of the month of June, 1908, was a question of fact for the jury to decide.

2. It was proven beyond controversy that a great flood and high water occurred at about the time in question, and was of extraordinary height and violence on either the third, fourth or fifth day of the month.

3. Whether the berme went out, or was washed away, on the 3d of June, before the period of extraordinary high water and on account of the negligent manner of its construction, or on a later date, by reason of the force of the unprecedented flood, was likewise a question of fact for the jury to determine.

1. The court, by instruction No. 3, advised the jury as follows: "The only burden the law imposed upon the railway company when it made said borrow pit was to leave sufficient space between it and the river to prevent the ordinary flood waters of the river, and such floods as could have been reasonably anticipated by the exercise of ordinary foresight and prudence, from breaking through the said space or berme so left; and if the railway company did so leave such space or berme at the place in question, then no liability attached to it on that account. Therefore, before you can return a verdict for the plaintiff in this action because of the making of the said borrow pit or excavation at the place in question, you must find from a preponderance of the evidence that the space between the borrow pit and the river was unskillfully, carelessly, and negligently left so narrow and weak as that it would not resist or sustain the weight of the waters of the said river at ordinary floodtime, and at such floods as could have been reasonably anticipated by the exercise of ordinary foresight and prudence, and that such negligent and unskillful

construction of its road was the direct cause of the damage to the plaintiff's land, and, unless you so find, then said defendant did all that it was in law required to do, and your verdict must be for the defendants on this issue.''

The court also gave instruction No. 5, as follows: ''The court instructs the jury that it was not the duty of the defendant railway company to foresee and prepare against unprecedented floods as such floods are herein defined; in other words, it was not its duty to prepare against the act of God. Its duty was to prepare against only ordinary flood waters, and such floods as could be reasonably anticipated by the exercise of ordinary foresight and prudence. If, therefore, you find by a preponderance of the evidence the defendant railway company exercised ordinary prudence and care in the construction of its railway, considering the character and nature of the stream, the lay of the territory which it drained, and the ordinary floods which occur in that vicinity, and such floods as could be reasonably anticipated by the exercise of ordinary foresight and prudence, then said defendant was not guilty of negligence in the construction of its railroad at the place in controversy.''

The court's instruction No. 6 reads as follows: ''Before the plaintiff can recover against the defendants, the plaintiff must show that the proximate cause of the injury or damage to plaintiff's land and property was the negligence of said defendants; it must appear from the evidence that the injury or damage was the natural and probable consequence of the negligence of the defendants, and that said injury or damage ought to have been foreseen by defendants in the light of the attending circumstances. The first requisite of the proximate cause is the doing or omitting to do an act which a man of ordinary prudence could foresee might naturally and probably produce the injury complained of; and the second requisite is that such act or omission did actually cause the injury. If, therefore, you find from a preponderance of the evidence that in making said borrow pit, as the evidence shows it was made, a person of ordinary prudence would not have foreseen the flood of June, 1908, or if you

find that said lands of said plaintiff would have been injured, had said borrow pit and berme never existed or been made, then the making of said borrow pit and berme, as the evidence shows the same was made, was not the proximate cause of the injury or damage to plaintiff's land and property, and defendants are not liable in law.''

No. 7 reads thus: ''The court instructs the jury that if you believe from the evidence in this case that the defendant railway company constructed its railroad in a manner approved by competent civil engineers, and so as to resist the ordinary recurring floods or rises in the Hellgate river, and such floods as could be reasonably anticipated by the exercise of ordinary foresight and prudence, and that the same did withstand and resist the flood of 1908 until after it had passed all previously known high-water records, and that when the rise in the river or flood had passed such known high-water marks the waters washed away the property of the plaintiff, then said defendants were not guilty of negligence; but the accident was the result of the unusual flood and high water, and what is commonly called the act of God, and your verdict should be for said defendants.''

We think these instructions fully covered the main issue in the case and rendered further directions unnecessary. However, the court also gave this instruction: ''No. 10. You are further instructed that by the act of God is meant those events [1] and accidents which proceed from natural causes and cannot be reasonably anticipated or guarded against, such as unprecedented freshets, floods, earthquakes, cyclones, lightning, and such like. For injuries occurring by any of these means, there is no liability, provided reasonable and ordinary care is exercised to guard against such occurrences.'' In our judgment, this instruction does not correctly state the law. It, in effect, declared the defendants responsible for failure to anticipate and guard against an act of God. We quote with approval the following language taken from the opinion of the court in *Kansas City P. & G. R. Co.* v. *Williams,* 3 Ind. Ter. 352, 58 S. W. 570: ''The rule of law in such cases is that the defendant is only required to take precautions against ordinary storms which occur

in the vicinity; and if the damage would have occurred by the act of God, notwithstanding the obstruction, even if there were negligence on the part of the defendant, damages cannot be recovered.  *  *  *  In this case, unlike most cases in which the act of God is invoked as a defense, the act of negligence did not occur during the storm, or after it was over.   Therefore the act is only made a negligent act by comparison with the duty which defendant owed before the storm.   It was not defendant's duty to foresee and prepare against an unprecedented storm; in other words, it was not defendant's duty to prepare against 'the act of God.'   Its duty was only to prepare against ordinary storms.'' (See, also, *Coleman* v. *Kansas City, St. J. & C. B. R. Co.*, 36 Mo. App. 476; *Polack* v. *Pioche*, 35 Cal. 416, 95 Am. Dec. 115; *Baltimore & O. R. Co.* v. *Sulphur Spring Ind. School Dist.*, 96 Pa. 65, 42 Am. Rep. 529; *American Locomotive Co.* v. *Hoffman*, 105 Va. 343, 8 Ann. Cas. 773, 6 L. R. A., n. s., 252, 54 S. E. 25; *Eagan* v. *Central Vermont Ry. Co.*, 81 Vt. 141, 69 Atl. 732; *Emery* v. *Raleigh & G. R. Co.*, 102 N. C. 209, 11 Am. St. Rep. 727, 9 S. E. 139; *Missouri K. & T. Ry. Co.* v. *Bell* (Tex. Civ. App.), 93 S. W. 198.)

The court also gave instruction No. 11, as follows: "You are further instructed that, even if you should find that the flood in question was unprecedented, still if you find that the embankment was defective, due to its insufficiency as to height or thickness, or as to the material constituting it, and the defendants knew that, or in the exercise of reasonable care could have known it, and failed to make the embankment or berme reasonably safe, and the washing of it away was due to its insufficient and defective condition, the defendants would then be responsible for the damages occasioned by the washing away of the berme, even though you should find that the flood in question was unprecedented in character, so as to constitute what is known as the act of God.'' This instruction is complained of, as are also others of the same tenor.   We think the criticism is merited.

It is unnecessary to further analyze the instructions.   The whole controversy on this branch of the case simply resolves itself into a question of proximate cause.   The law is that if the

berme was washed away by the ordinary flood waters of the stream by reason of its negligent construction, then the defendants are liable. If, on the other hand, it withstood the ordinary flood waters and was washed out by an extraordinary flood or act of God, which would have washed it away and would have caused the same injury to plaintiff's lands, whether it was properly constructed or otherwise, then the defendants are not liable. If an act of God alone would not produce injury, but, assuming [2] that there was an act of God, a plaintiff's loss is made possible by reason of a prior, coincident, or subsequent negligent act of a defendant, the latter is liable, because his act is *causa sine qua non*. (*Meisner* v. *City of Dillon*, 29 Mont. 116, 74 Pac. 130; *Mulrone* v. *Marshall*, 35 Mont. 238, 88 Pac. 797; *Frederick* v. *Hale*, 42 Mont. 153, 112 Pac. 70.)   In the instant case, a sharp conflict was presented whether the berme went out during ordinary high water by reason of its negligent construction or whether it withstood such ordinary pressure, and was only carried away when the flood assumed extraordinary proportions. It is paradoxical to say that the berme, although of negligent construction, withstood the ordinary pressure of the waters, but that the defendant is liable on account of the fact that it was carried away by reason of infirmities in its construction when the flood assumed the proportions of an act of God. Such a situation is not to be considered. As has heretofore been said, the issue was well defined, and upon a retrial it may be simply stated to the jury.

2. Regarding the degree of care required in adopting methods for carrying forward construction work, this court said, in *Kinsel* v. *North Butte Min. Co.*, 44 Mont. 445, 120 Pac. 797: "It is not the common custom in itself which exonerates; but proof [3] of the custom, coupled with proof that it is the usage of ordinarily prudent and careful men under like circumstances, will absolve (a person) adopting the same * * * method from a charge of negligence, because the degree of care exercised by ordinarily prudent men in the same circumstances is the standard by which a jury must be guided."

3. This instruction was given concerning the measure of damages: "(19) You are instructed that the true measure of

[4]  damage to the land permanently injured, if the evidence shows any part of the same is permanently injured, is the fair market value of the land on the date of said injury.  By market value of the land is meant the value which would be placed thereon if it were offered for sale by one who desired, but was under no necessity, to sell, and bought by one who desired to purchase, but was under no necessity to purchase.  You will not, therefore, take into consideration any peculiar value which the land might have to the owner, apart from what would be paid by the general public; nor will you consider the owner's unwillingness, if any appears, to sell the land.  Furthermore, the value of the property cannot be measured by its value to the party owning it—that is to say, to the plaintiff in this case; nor can it be measured solely by the plaintiff's income or net proceeds derived from the particular property, but you may take into consideration the increase or net proceeds of said land, if any, in determining the market value thereof.  In fixing the market value of the property, you will consider it simply as a case of a willing seller and a willing buyer; that is, What would the general public pay for said land on the market at its fair cash value ?''  This instruction was not objected to and, assuming that it merely lays down a rule for determining the value of land, appears to be unobjectionable.  But complaint is made that incompetent testimony was received concerning the value of the injured lands.  There was competent testimony on the subject, aside from that to which objection was made.  Upon a retrial, the court will have an opportunity to scrutinize the evidence offered on this branch of the case, so as to confine it within the rule of the instruction.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 1, 1912.