Filed 10/06/25

VERMONT SUPERIOR COURT

Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-01685

**Melanie MacEachern, et al v. Kurtis Day Mellett, et al**

## ENTRY REGARDING MOTIONS

Plaintiffs Melanie MacEachern and James LaRock filed this action against defendants Kurtis Mellett, Margo Mellett, Eligo Corporation. The amended complaint pleads causes of action for nuisance, trespass, trespass against trees (i.e., timber trespass), illegal construction of nuisance or "spite" fences, and to quiet title. The Mellett defendants have filed a third-party complaint seeking indemnification from third-party defendant Adam Allen on the timber trespass claim. Currently pending before the court are the following motions:

- Plaintiffs' motion for partial summary judgment (Motion 11)

- Defendants' motions to reconsider the denial of a request to enter and inspect, and to compel entry and inspection (Motions 14 and 15)

- Plaintiffs' motion to strike defendants' sur-reply and affidavit (Motion 16)

- Defendants' motion to allow the sur-reply (Motion 17)

- Defendants' motion to dismiss the timber trespass claim for failure to join a necessary party (Motion 18)

- Defendants' cross-motion for summary judgment on the timber trespass claim (Motion 19)

For the reasons set forth below, plaintiffs' motion for partial summary judgment is denied; defendants' motion for partial summary judgment on their timber trespass claim is granted; the motion to dismiss the timber trespass claim is accordingly moot; the motions to reconsider and compel are withdrawn and are accordingly moot; plaintiffs' motion to strike defendants' sur-reply and affidavit are granted; and defendants' motion to allow the sur-reply is denied.

### 1. Summary judgment and related motions

Both parties have moved for partial summary judgment. Plaintiffs seek partial summary judgment on "all issues except damages and remedy for their trespass against

trees, trespass by sediment, and nuisance claims." Pls.' Summ. J. Mem. 1. Defendants seek partial summary judgment on the timber trespass claim.

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hier v. Slate Valley Unified Sch. Dist.*, 2025 VT 2, ¶ 8 (quoting V.R.C.P. 56(a)). The initial burden falls on the moving party to show an absence of dispute of material fact. *Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (citing V.R.C.P. 56(a)). If that showing is made, the burden shifts to the non-moving party to come forward with evidence that raises a dispute as to the facts in issue. *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 188 Vt. 432. Where that party bears the burden of proof on an issue, if fairly challenged by the motion papers, it must come forward with evidence sufficient to meet its burden of proof on that issue. *Burgess v. Lamoille Housing P'ship*, 2016 VT 31, ¶ 17, 201 Vt. 450. The evidence, on either side, must be admissible. V.R.C.P. 56(c)(1), (2) & (6); *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112. All reasonable doubts and inferences are resolved in favor of the nonmoving party. *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272. Thus, "[i]n determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Gates v. Mack Molding Co.*, 2022 VT 24, ¶ 13, 216 Vt. 379 (quotation omitted). Even in the absence of an opposition, it remains the movant's burden to demonstrate it is entitled to summary judgment. Where the movant affirmatively seeks summary judgment on its own claims, the burden is a heavy one.

In this case, the court previously made factual findings based on the evidentiary record created at a contested preliminary injunction hearing. The record from that hearing is appropriately considered in determining whether there are disputed factual issues necessitating a trial and is incorporated herein. *See* V.R.C.P. 65(b)(2) ("[A]ny evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial.").

The court will address each of plaintiff's claims in turn.

## A. Nuisance

The amended complaint alleges a nuisance claim against all three defendants based on their allegedly unlawful and unpermitted development activities and for engaging in a campaign of menacing and harassment. In their summary judgment motion, plaintiffs more specifically argue that defendants are liable for nuisance because they have constructed a road and installed a culvert that changed the flow of water from defendants' property to plaintiff's property; increased the flow in a way that damaged plaintiff's property; engaged in unpermitted or illegal construction activity in order to clear and subdivide defendants' land; and engaged in an intentional campaign to annoy defendants.

Plaintiffs allege private (as opposed to public) nuisance. "Private nuisance is a substantial and unreasonable interference with a person's interest in the use and enjoyment of land." *Nesti v. Vt. Agency of Transp.*, 2023 VT 1, ¶ 31, 217 Vt. 423 (quotation omitted).

"Interference with the flow of surface water can result in a nuisance." *Id* (citing *Canton v. Graniteville Fire Dist. No. 4,* 171 Vt. 551, 552 (2000). As the Vermont Supreme Court has explained:

> An upper property owner is entitled to have surface water pass to lower lands in its natural condition. However, an upper property owner cannot artificially change the manner of flow by discharging it onto the lower land at a different place from its natural discharge. Such interference with the flow of surface water is a form of conduct that may result in a trespass or nuisance.

> Liability for trespass arises when one intentionally enters or causes a thing to enter the land of another. Thus, one who causes water to enter the land of another is liable for trespass. . . .

> Even assuming water flow is an indirect invasion of property, and therefore not a trespass, interference with surface water may constitute a nuisance. An upper property owner creates a nuisance when he or she causes water to flow onto lower lands in a manner or place different from its natural state, harming the lower property owner's interest in the use and enjoyment of that land.

*Canton*, 171 Vt. at 552. *See also Powers v. Judd*, 150 Vt. 290, 292 (1988) ("As a general proposition, an upper property owner cannot artificially increase the natural flow of water to a lower property owner or change its manner of flow by discharging it onto the lower land at a different place from its natural discharge. But, in cases involving only increased flowage and not a change in the place of discharge, *an upper owner may increase the flow as long as it causes no injury to the lower property.*" (quotation omitted, emphasis in original)).

As these excerpts make clear, to sustain a nuisance or trespass claim based on alleged interference with water flow, plaintiffs must prove that the defendants' interference caused damage to plaintiffs' property. Expert testimony is generally required to establish causation in this context. *See, e.g.*, *Aldridge v. Brightlook Condominium Owners Ass'n*, No. 21-CV-02983, 2023 WL 9318525, at \*5 (Vt. Super. Dec. 08, 2023) (Richardson, J.); *VTRE Investments, LLC v. Montchilly, Inc.,* No. 127-7-17 Lecv, 2019 WL 9573861, at \*8-9 (Aug. 13, 2019) (Shafritz, J.).

There are plainly disputed facts as to whether any of defendants' activities actually altered or increased the water flow and thereby damaged plaintiffs' property. For example, plaintiff's expert Matthew Gardner has opined that "[t]he culvert installed as part of the access road extension is concentrating runoff into" plaintiff's property and "causing erosion." Expert Report of Matthew Gardner, P.E., at 14. But defendants' expert Douglas

Hewitt reported that "the performance of [the] culvert appears unaffected" by defendants' work and that he "observed no significant active erosion or sedimentation associated with the drive relocation." Expert Report of Douglas Hewitt, at 1. Plaintiffs are not entitled to summary judgment on this issue.

Plaintiffs' also claim "nuisance per se" based on defendants' allegedly unpermitted or unlawful development activity. This argument is meritless. A nuisance per se is a "nuisance at all times and under any circumstances, regardless of location or surroundings." *Roy v. Woodstock Cmty. Tr., Inc.*, 2013 VT 100A, ¶ 73, 195 Vt. 427 (quoting *Sowers v. Forest Hills Subdivision,* 294 P.3d 427, 431 (Nev. 2013) (rejecting argument that construction of a private wind turbine in a residential area is a nuisance per se)). Prototypical examples include operation of a brothel or "bawdy house," *e.g.*, *State v. Navy,* 17 S.E.2d 626, 628 (W. Va. 1941), obstructing a public highway, *e.g.*, *State v. Smith*, 54 Vt. 403, 410 (1882), or the "building of a piggery in a residential area," *e.g.*, *Li v. Feldt*, N.W.2d 127, 136 (Mich. 1992) (Boyle, J., concurring). The mere failure to obtain a required permit, standing alone, does not create a nuisance per se. *See Moore v. Steve's Outboard Serv.*, 339 P.3d 169, 172 (Wash. 2014) (en banc) (in the absence of an "applicable regulatory scheme that transforms the failure to obtain a permit into a nuisance per se . . . no court that has held the failure to get a required permit transforms a use of land into a nuisance per se"). Plaintiffs are not entitled to summary judgment under a nuisance per se theory.

Finally, the record established at the preliminary injunction hearing precludes any finding at this stage that plaintiffs are entitled to summary judgment on their claim that defendants engaged in an intentional campaign of harassment against plaintiffs. *See* Entry Regarding Motions 3-4 (June 2, 2025).

Plaintiffs' motion for summary judgment on their nuisance claim is denied.

## B. Trespass

The amended complaint alleges trespass based on sediment from a berm and road that defendants have constructed leaching onto plaintiffs' property due to defendant' failure to implement proper erosion control measures, and by spreading chemicals near the parties' property boundary and storing spare tires upstream from plaintiffs' property. Plaintiffs only seek summary judgment on their claim for trespass by sediment. But like the water flow claims discussed above, the issue of trespass by sediment and whether defendants instituted proper erosion controls is sharply disputed by the parties' experts. That defendants concede some sediment may have been displaced during an extreme weather event does not entitle plaintiffs to judgment on their trespass claim. *See Eagan v. Cent. Vermont Ry. Co.*, 81 Vt. 141 (1908) (declining to impose liability when water was diverted from culvert during "extraordinary" weather event); *Ploof v. Putnam*, 81 Vt. 471, 71 A. 188, 189 (1908) ("There are many cases in the books which hold that necessity, and an inability to control movements inaugurated in the proper exercise of a strict right, will justify entries

upon land and interferences with personal property that would otherwise have been trespasses.").

Summary judgment on this issue is accordingly denied.

## C. Timber Trespass

It is undisputed that defendants hired a logger—third-party defendant Adam Allen—to do logging work for them, that Adam cut down multiple trees on plaintiffs' property near the boundary line, that plaintiffs did not authorize the removal of these trees, and that Adam ultimately paid the defendants for the trees he removed including some of plaintiffs. *See* Defs.' Resps. to Pls.' SUMF ¶¶ 37-39. Plaintiffs accordingly argue they are entitled to summary judgment for liability on their timber trespass claim, and that the issue of damages should be determined at trial. Defendants argue they are entitled to summary judgment because it is undisputed that Adam—not defendants—cut down the trees in question. In the alternative, defendants ask for summary judgment on any claim for treble damages based on timber trespass. Separately, defendants have moved to dismiss the timber trespass claim for plaintiffs' failure to join Adam as a necessary party.

Vermont's timber trespass statute, in relevant part, provides that "if a person cuts down" another's timber without permission, the injured party "may recover of such person" treble damages by filing an action under the statute. 13 V.S.A. § 3606(a), (b).

As currently enacted, the statute does not provide for liability against a landowner who did not personally perform the logging activities that resulted in the timber trespass.

Before 2010, "an injured party could not recover damages for timber trespass from a landowner at all unless the landowner was the person who cut the trees." *Epsom v. Crandall*, 2019 VT 74, ¶ 30, 211 Vt. 94. *Compare Lavalette v. Noyes*, 124 Vt. 353, 355-56 (extending liability to defendant as participant in "joint logging operation" as a "principal" trespasser where evidence showed that, although he did not personally fell plaintiff's trees, he "was present when the plaintiffs' boundary was pointed out on the ground," "assisted with cutting when there was a shortage of logs," and "was compensated from the logs that were cut, including the timber that was harvested on the lands of the plaintiffs") *with Masters v. Stone*, 134 Vt. 529, 531 (1976) ("The sale of cutting rights only to timber on [landowner's] property does not operate to make her a principal trespasser on another's land because the 'independent contractor' operator cut over the line.").

The statute was amended in 2010, however, to provide a "cause of action for damages" against a landowner based on "the failure of the landowner or the landowner's agent to mark the harvest unit properly" if that failure resulted in a timber trespass. *See* 2009, No. 147 § 5 (Adj. Sess.). Following this amendment, an injured party could maintain a cause of action against a landowner who failed to properly mark the timber harvest, but only for single damages (not treble damages). *Epsom*, 2019 VT 74, ¶¶ 30-33. But the

Legislature removed this cause of action from the statute in 2016. *See* 2015, No. 106 § 1 (Adj. Sess.). Accordingly, as was the case before 2010, "a homeowner who ha[s] authorized logging on her property without ensuring that the loggers knew the boundaries of the property [can] not be held liable under this statute when the loggers cut over her property line." *See Tumel v. Richardson Assocs., Inc.*, No. 2002-229, 2003 WL 25745979, at *2 (Vt. Apr. 2003) (unpub. three-justice entry order) (citing *Masters,* 134 Vt. 529).

The record before the court on these dueling summary judgment motions establishes that defendants did not personally participate in the logging job performed by Adam Allen such that they can be considered "principal" trespassers subject to liability under 13 V.S.A. § 3606. Nor is there a basis to maintain a common law trespass claim against defendants related to Adam's removal of plaintiffs' trees, which is not alleged in the complaint.

Defendants' cross-motion for summary judgment on plaintiffs' timber trespass claim is granted. Defendants' motion to dismiss the timber trespass claim for failure to join a necessary party is accordingly moot.

### D. Spite Fences

The amended complaint alleges that defendants have constructed nuisance or "spite" fences in violation of 24 V.S.A § 3817 by constructing a berm on their property and leaving debris on the area plaintiffs use to access drinking water. On summary judgment, plaintiffs' arguments have shifted insofar as they argue that defendants' spite fences include the berm and a "fence made of multiple survey stakes, garden fencing, and a tie line, all of which [defendants] have decorated with multiple survey flats, along the parties' boundary at the point closest to the plaintiffs' home." Pls. Summ. J. Mem. 7.

Under Section 3817, a person is subject to a $100 fine if they "erect or maintain an unnecessary fence or other structure for the purpose of annoying the owners of adjoining property by obstructing their view or depriving them of light or air." 24 V.S.A. § 3817. As noted above and in the court's preliminary injunction order, there are plainly disputed facts as to whether any of defendants' alleged conduct was "done for the purpose of annoying" plaintiffs or otherwise interfering with their enjoyment of their property, as opposed to having been done for the purpose of using and developing defendants' own property. *See Obolensky v. Trombley*, 2015 VT 34, ¶ 29, 198 Vt. 401 ("The questions of whether a fence is unnecessary, and whether a fence was erected for the purpose of annoying the owners of adjoining property by obstructing their view or depriving them of light or air, are factual determinations to be made by the trial court in the first instance based on the evidence received at trial." (quotations omitted)).

Indeed, the summary judgment record reflects that the 2024 fence was done, at least in part, to mark the boundary line and prevent plaintiffs from trespassing on defendants' property, and that the berm was installed, at least in part, pursuant to an agreement

defendants made with the Town of Craftsbury that did not involve plaintiffs. *See* Defs.' Resps. to Pls.' SUMF ¶¶ 13-28, 119-21 (July 9, 2025).

Plaintiffs' motion for summary judgment on this claim is denied.

### E. Quiet Title

Plaintiff also seek summary judgment on their quiet title claim for a declaratory judgment that they have a right to appropriate water from the natural spring on defendants' property to fill their pond.

Defendants dug the pond before subdividing and previous owners have fed the pond by diverting water from a seasonal creek fed by a natural spring to ensure the pond remains full during the summer. In April 2024, defendants told plaintiffs for the first time they plaintiffs had no right to divert water from the stream to fill the pond. As a result, plaintiffs' pond is now often only filled to a third of its volume, with buggy stagnant water, throughout the spring and summer

When defendants subdivided their land and sold what is now plaintiffs' parcel in 2013, the subdivision deed included an easement "for the use of an existing spring located upon" defendants' retained land, "together with the right to enter upon" the retained land "for construction, repair, maintenance, and other such reasonable purposes as may arise regarding the potable water system." *See* Defs.' Resps. to Pls.' SUMF ¶¶ 81 (July 9, 2025).

This easement was expressly conveyed "to comply with" State of Vermont Wastewater Permit # WW-7-3657. 5/13/25 Mot. Hearing, Defs.' Exh. D. The referenced wastewater permit is not in the summary judgment record, although it is publicly available. The court takes judicial notice that the permit authorizes the subdivision lot "to utilize the existing off-lot water supply system provided the potable water supply is operated at all times in a manner that keeps the supply free from contamination," and prohibits conveyance of the subdivision lot "without water rights to the approved water supply," which shall "provide for an uninterrupted supply of water together with the right to enter upon the property for the construction, repair, maintenance and other such reasonable purposes as may arise regarding the potable water supply."[1] *See* V.R.E. 201. Neither the deed nor the permit mentions defendants' stream or plaintiffs' pond.

Plaintiffs' water supply for their home comes from a concrete spring tile that is sunk into the earth in the valley north of the natural spring. Defendants claim the easement provides plaintiff a right to access and maintain the potable water system only and not a right to fill their pond from the stream. Plaintiffs argue the deed conveyed two separate

---

[1] The permit is available by searching at the Department of Environmental Conservation's Waste Water Regional Office Permit Search website, https://anrweb.vt.gov/dec/wwdocs/default.aspx (last visited October 2, 2025).

rights—general use of the spring including to fill their pond, and a specific right to maintain their potable water system.

When an interpreting the language of an easement, the intent of the parties governs. If the terms of the easement are unambiguous, they must be enforced. Otherwise, the court looks to rules of construction and extrinsic evidence. *See generally Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 56, 199 Vt. 313. The Vermont Supreme Court has elaborated:

> The law requires no technical formula of words . . . . The only essential is that the parties make clear their intention. . . . If the language of the instrument is not clear, the intentions of the parties must be gathered from the total language and from the circumstances which prevailed at the time of the conveyance. And all doubts in this regard are to be resolved in favor of the use of land free from such encumbrances.

*Scanlan v. Hopkins*, 128 Vt. 626, 629-30 (1970).

It is not clear from the record that the 2013 easement for "use of an existing spring" gave plaintiffs a right to perpetually fill their pond from defendants' spring-fed stream. *See id.* at 630 (the "bare language" of deed obligating grantors to provide material for culvert "for the purpose of conducting surface water" to a grantors' pond did not obligate grantees "to maintain the pond in the status quo," but such obligation could be implied based on surrounding circumstances at time of grant). The language of the deed is ambiguous at best on this point and the evidence in the record is inadequate to compel the conclusion that such a right must be implied as a matter of law. *See id.* at 630-31 ("[F]rom the circumstances which existed at the time of the grant, it cannot be gathered that either of the parties to the deed intended to add a new benefit to the land conveyed or increase the burden on the land retained. Neither is it shown that such an easement was necessary to the full enjoyment of the land conveyed. These are essential requisites to the creation of an easement by implication.").[2]

Plaintiffs' motion for summary judgment on their quiet title claim is denied.

---

[2] But if such a right was conveyed in 2013, it remains today. An easement to water source provides a right to continued use, even if the nature of the use changes, so long as it "is not an enlargement or extension of the right originally granted." *See Sargent v. Gagne*, 121 Vt. 1, 13 (1958). *Cf. Clement v. Rutland Country Club*, 94 Vt. 63, 66-67 (plaintiff had no right to divert water from a second spring that "did not exist when the . . . deed was given"); *Davidson v. Vaughn*, 114 Vt. 243, 250 (1945) ("A perpetual right to take water is inconsistent with the supposition that it can be used only in a certain building, for no building can be expected to stand forever. . . . . So long as he takes no more than this . . . he may enlarge the method of using it.").

## 2. Motions related to plaintiffs' sur-reply

The court declines to consider the sur-reply and supporting affidavit filed by defendants. *See* V.R.C.P. 7(b)(4). The motion to strike the sur-reply is accordingly granted and the motion to permit the sur-reply is denied.

## 3. Defendants' motions to reconsider and compel

These motions are moot based on defendants' notice of withdrawal filed with the court on August 29, 2025.

### ORDER

Plaintiffs' motion for partial summary judgment (Motion 11) is DENIED.

Defendants' motions to reconsider denial of a request to enter and inspect, and to compel entry and inspection (Motions 14 and 15) are MOOT

Plaintiffs' motion to strike defendants' sur-reply and affidavit (Motion 16) is GRANTED.

Defendants' motion to allow the sur-reply (Motion 17) is DENIED.

Defendants' motion to dismiss the timber trespass claim (Motion 18) is MOOT.

Defendants' cross-motion for summary judgment om the timber trespass claim (Motion 19) is GRANTED.

Electronically signed on: 10/2/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge