MISSISSIPPI & TENNESSEE R. R. CO. v. D. H. ARCHIBALD ET AL.

1. DAMAGES.  *Negligence concurring with natural causes.*

    A defendant cannot escape liability for injuries to the property of another consequent upon his negligent acts because the proof shows that ordinary natural agencies, presumably well known to him, concurred with such acts in producing the injury.

2. WATER-COURSE.  *Obstruction by railroad.  Negligence.  Natural agencies contributing to injury.*

    Where a railroad company, having constructed a trestle and dam across a natural water-course, suffers them to remain in such a condition that the water is backed up and overflows plaintiffs' land, causing damage, it cannot be relieved of liability by proof that since the original construction of the trestle and dam the channel of the stream had become gradually filled up, as a result of the opening to cultivation of lands contiguous to the stream and the consequent drainage into the stream above the dam of soil and other surface material.  The company, in maintaining the dam and trestle, must have regard to such changed conditions and the operation of ordinary natural agencies.

3. OBSTRUCTING WATER-COURSE.  *Negligence.  Continuing wrongs.  Purchaser.*

    A railroad company, which has negligently suffered a dam built by it across a natural water-course to remain in a condition to overflow the

lands above it, is liable to the owner for injury to said land resulting from an overflow, although such owner purchased the land after the erection of the dam and with knowledge of its effects, and although no positive acts of the company have intervened since the purchase. The wrong is a continuing one.

FROM the circuit court of Panola county, second district.

HON. W. M. ROGERS, Judge.

The facts are stated in the opinion.

The instructions for the plaintiff, which are referred to in the opinion, are as follows :—

1. " If the jury believe from the evidence that the filling up of the water-course at the first trestle by the defendant on its right-of-way over the land in question—if the jury believe from evidence there was such water-course—has prevented a stream of water running naturally through the land from regaining the natural channel, which channel had been running, and closed by defendant, and that it had not been furnished by defendant with the proper opening, and that the natural channel could have been reasonably restored by the use of reasonable and ordinary means by defendant, and that plaintiff has been since October 10th, 1885, and are still injured by the filling up of said first culvert, defendant is responsible for such damage.

2. " If the jury believe from the evidence that defendant so carelessly and negligently repaired its road-bed as to do material injury to plaintiff, and that plaintiffs used all reasonable means to protect themselves from such damage under such circumstances, plaintiffs would not be guilty of contributory negligence because of using such means, and the defendant would be responsible for such damage occurring since October 10th, 1885.

3. " If the jury believe from the evidence that the defendant, in building its road-bed across plaintiffs' land, improperly and carelessly filled up the water-course at the first trestle—if they believe from the evidence any such water-course existed at such first trestle —and that by filling up such first trestle plaintiffs' land was damaged since October 10th, 1885, defendant would be responsible for such damage.

4. " The court charges the jury that if they believe from all the evidence that defendant, since the 10th of October, 1885, carelessly obstructed the flow of water, flowing in natural water-courses, so as to cause the same to overflow plaintiff's land to his damage, then the jury will find for the plaintiff and assess his damage at whatever amount may be established by the evidence."

*W. P. & J. B. Harris,* for appellant.

1. No one can read the record without reaching the conclusion that the damage to plaintiffs' land is to be attributed to natural causes operating for over a quarter of a century, for which the railroad company is not responsible and which it was powerless to prevent.    The proof is uncontradicted that the appellant constructed its track more than twenty years ago, taking proper and sufficient steps to prevent injury with reference to the then existing conditions.    The company will not therefore be liable if owing to natural causes subsequently arising, such as are shown in this case, the outlets originally sufficient should become insufficient to admit of absolute unobstructed passage of the water.

2. It appears that plaintiffs bought the land with full knowledge of the trestle and dam and the evil, and it does not appear that the appellant has done anything since plaintiffs purchased the land to cause the injury ; nor does it appear that there is anything the company can do to relieve matters.    Under such circumstances the defendant would not be liable.

3. The fourth instruction for plaintiffs should not have been given, for there is no evidence to support it.    There is no evidence of anything done by the defendant since 1885 which caused the damage.    So with the first, second, and third instructions.    Those asked by defendant touching its right to turn back surface waters should have been given.    5 Am. & Eng. R. R. Cas. 85, and note ; Gould on Waters, § 265 ; Washburn on Easements, 309 *et seq.*

*Sullivan & Whitfield,* for appellees.

Counsel, in support of the verdict, filed a brief and written argument discussing the evidence, and contending that the case was fairly submitted to the jury on instructions that were correct, and that the verdict was warranted by the testimony ; that the injury

was in its nature a continuing one, and therefore the plaintiffs' right to recover was unaffected by the fact that the dam and trestle were originally built before their purchase of the land. Angell on Water-Courses, § 465; that the instructions given correctly announced the law. *Miss. Cent. R. R. Co.* v. *Mason*, 51 Miss. 234; that the charges refused were properly refused, as they referred only to surface water, while this is a case of damage for obstructing a natural water-course.

WOODS, C. J., delivered the opinion of the court.

This action was instituted by appellees in the circuit court of Yalobusha county, for the recovery of damages alleged to have been sustained by reason of the negligence of appellant in the building and repair of certain trestles over certain water-courses, which drained the lands of appellees, by means of which negligent building and repair, the said water-courses were filled up and choked, and said lands overflowed and submerged and their value destroyed. There was a plea of not guilty filed by the railroad company, and a change of venue to the 2d district of Panola county by consent of the parties. On this issue there was a verdict for plaintiffs below in the sum of fifteen hundred dollars, and judgment accordingly. From this judgment the railroad company appeals to this court.

We do not understand that it is disputed that appellees' lands have been submerged and damaged by reason of the damming of the water-courses referred to and described in the pleadings and proofs. The controversy goes to the causes producing the overflow and damage. On the part of appellees it is urged that the careless, negligent, and insufficient manner of building and repairing the trestles of the railroad where the road-bed crosses the water-courses, and the erection of a bulkhead in Alston creek by appellant, and the construction of a small levee on the railroad right-of-way and near to the lands in question, have gradually raised the beds of the stream, and partially filled and choked their currents, and, in seasons of rains, actually dammed the water-courses at the trestle, whereby the waters, brought down in the

channels, were unable to flow and escape across the defendant's road-bed, and so were forced out of their beds and driven back on the lands, covering them with a deposit of sand and gravel and greatly depreciating, if not wholly destroying, their value.

For appellant it is insisted that the injuries complained of are the results of natural causes, long operating, and now only reaching that stage of destructiveness of which appellees complain. It is said that the denuding the range of hills, which lie east of and enclose the lands in question of their timber, and the subjecting the soil of these hills to the processes of cultivation, in ordinary agriculture, must result, with unerring certainty, in the rapid disappearance of the loamy top soil and its transference to the valleys below, and the gradual washing away of large parts of the looser materials composing the bulk of the hills, and their deposit in the runs and ditches and water-courses into which the surface waters from the hills pour, and so, by the operation of natural causes in the changed condition of the hills, the streams have become, in process of time, filled with these deposits from the hills, and that hence the overflows upon appellees' lands, and their destruction by deposits of sand and gravel, result from agencies over which the railroad has no control whatever.

We think this statement fairly presents the real issue. While there is a vast mass of testimony, and some conflict in matters apparently important, stripped of all its superfluities, the case will be found to be of the character disclosed in the statement just made. It is not a question of obstructing or diverting or discharging surface water by one owner upon the lands of an adjacent owner. The law applicable to such cases finds no room for examination in the case before us. The controlling question here is this, viz: were these water-courses obstructed by the negligence of the company, whereby the lands have been overflowed and damaged, or are these obstructions the product of natural agencies, long operating, and just now making their hurtful power to be noticed and felt?

It must be admitted, we think, that the stripping of lands of their timber, and the stirring and loosening of their soils by the

processes of cultivation, has the natural effect of carrying off, in a rapid manner and in a large measure, the lighter portions of the hills so loosened and made ready to be carried away to the low lands by storm and rain. It is doubtless true, too, that the operation of these natural causes contributed materially to the overflows which are alleged to have damaged the lands in question. Indeed, it is manifest that without such contribution by natural causes, there could no choking of channels and damming of water-courses take place ordinarily. We can scarcely conceive of any stream ever becoming choked and dammed with boughs and leaves, and sand and dirt, unless natural causes are taken into the account. Granting the full operation of natural causes in the case at bar, the vital question yet remains unanswered. That question is, did the defendant company, with presumable knowledge of the changed conditions of the lands and their environment, and of the unfailing operation of the natural agencies we have adverted to, do or omit to do, anything in the line of its duty, whereby the flooding of appellees' lands and their consequent destruction was made probable, not to say inevitable, after every heavy rain-fall?

A glance at the uncontroverted proofs will answer the question. Two of the water-courses under consideration (Alston creek and Bates creek) were streams with well-defined channels, in width from twenty to thirty feet, and in depth from six to ten feet. In one of these water-courses, in an effort to protect its road-bed from inundation, appellant erected and for a few years maintained a bulkhead, whereby the waters in that stream were diverted from their channel and bodily thrown on the lands of appellees. By way of further protection to its road-bed, appellant cut a ditch, with its open face next to the road-bed, and threw up a levee, ranging from one and a half to four feet in height, across the entire western border of appellees' lands, whereby the diverted waters from Alston creek, and the overflowed waters from the other creeks were thrown back on the lands alleged to have been damaged. And at each of the three trestles, built by the company in its road-bed for the outflow of the three creeks, there is shown to have been three replacements of such trestles, and, on each occa-

sion, the old piles which supported the trestle were not removed, but were cut off above the surface of the water ready to catch any drift brought down by the waters from above, with the result of having left a small opening for the escape of the waters in these streams, whereas the depth of such channels, as we have already seen, was originally from six to ten feet.

Conceding the action of natural causes, and the legitimate effects of such action, as contended by appellant's counsel, can it be successfully maintained that the conduct of the railroad, in the particulars just above mentioned, was such as to free it from liability? To ask the question, in the light of the facts of the case, is to answer it. The company, in our opinion, directly contributed to the creation of those obstructions to the water-courses which flooded appellees' lands, and resulted in the injuries complained of.

Moreover, the consideration of the conduct of appellant, as showing proper care, or the want of it, in these various particulars, as well as the consideration of the action of natural causes operating in this case, were properly matters to be submitted to the determination of a jury. They were so submitted, and the finding of the jury is abundantly supported by the evidence in the case, and meets our approbation.

It is asserted by counsel for appellant that appellees having bought the lands subsequent to the building of the railroad, and with full knowledge of the evil, and it not having been shown that anything has been done by the railroad, since appellees' acquisition of title, to cause the injury complained of, the railroad company cannot be held liable in this action. We think counsel misconceives. The wrongs done by appellant are continuing wrongs; the action of appellant, of which complaint is made, has been silently and slowly operating, but without hurt or damage until recently; the causes which have resulted in this injury have been continuously working, and the injury itself is a continuing one. In the very section in Angell on Water-Courses, to which appellant's counsel refer us for support of their proposition, we find it declared that a plaintiff is entitled to recover, although the dams producing such injury were erected before the plaintiff had

any interest in the property to which the injury was done, and the dams had not since been raised. See Angell on Water-Courses, § 465; *Brown* v. *Cayuga, etc., R. R. Co.,* 2 Kernan, 486.

Let us examine briefly the line on which the court below submitted the case to the jury.

Complaint is made that the 4th instruction for plaintiff below was improperly given, inasmuch as, is said, there was no evidence to support it. The charge, in effect, instructs the jury that if the defendant company, since October, 1885, had carelessly obstructed the waters in the water-courses, so as to cause them to overflow the lands of plaintiffs, and to damage them, then the jury should find for plaintiffs.

The charge, as it seems to us, is clearly correct, and is not wholly inapplicable for want of evidence on which to rest. The evidence unmistakably shows that, at some one or all of these three trestles, several times in each year, after heavy rains, the water-courses are so obstructed as to prevent the outflow of the currents across the railroad, through these trestles, whereby the floods were backed up on these lands, and that this injurious condition remained until the railroad hands removed the drift-wood and other obstructing materials, and opened the outlets. The exception, as it appears to us, is therefore not well taken.

We disagree with counsel, also, in their views as to the 1st, 2d, and 3d instructions given for plaintiff below. As in the 4th, so here in these three, we think there was evidence which warranted the trial judge in giving the charges. The propositions of law embraced in these four instructions are conceded to be correct in the abstract, and we are of the opinion that they were correct in their concrete application also.

The action of the court below, in refusing certain charges asked by the railroad company, having reference to the law applicable to the control of rain-water and surface water, as distinguished from waters flowing in defined channels of streams, is assigned for error likewise.

The most cursory examination of the record will demonstrate that this was not a case in which any question concerning surface

water was presented.   It is undeniable that the great body of the waters which flowed through these water-courses was hastily gathered into the channels of the streams from the rain-falls on the hills and other lands adjacent to them, but it is equally undeniable that when once this surface water has found its way to the beds of well-defined streams, and has joined their currents, it ceases to possess any of the qualities of surface water, and is regarded only as part and parcel of the volume that flows in the channels of the water-courses.   The waters which flooded the lands of the appellees doubtless were largely gathered from the hills ranged to the east of the scene of their destructiveness, but long before the injury had been wrought they had mingled with all other waters in the torrent, and had been stamped with all the distinctive marks of waters gathered into water-courses.

Entertaining this view, we think the court below properly refused these instructions, touching the powers and rights of owner over surface water, as tending in all likelihood, to confuse and mislead the jury.

Looking at the entire case, we are unable to say that the proper conclusion was not reached, and the judgment of the court below is therefore,

*Affirmed.*