## AMELIA KOCH ET AL. v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

1. A count, charging that the defendant did an act on its own land whereby the water from a creek was caused to flow on to the land of the plaintiff, must show that the act so alleged to have been done was tortious.

2. The naked fact that a landowner altered a bank or artificial structure on his own land lays, *per se,* no ground of action, even though the adjoining land be injured thereby.

   *Quære.* Will a legislative act, promoted by a body of landowners, create in law a permanent easement in the lands of some of such promoters in favor of the others?

3. A statement that a defendant many years ago filled up and altered a creek so as to divert its water on to the land adjacent to the plaintiff's land, but, by a bank or roadway, kept it from coming thereon, and that, recently, the defendant has made an opening in such bank or roadway whereby such water escapes on to the premises of the plaintiff, discloses an actionable wrong.

---

Demurrer to each count of *narr.*

Argued at February Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the demurrant, *Bedle, Muirheid & McGee.*

Contra, *Joseph A. McCreary.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The plaintiff complains that the defendant, by certain tortious acts, has caused the waters of the Hackensack river to be discharged upon her meadow land.

We think it is obvious that the first count demurred to does not state facts from which the court can see that the plaintiff has the cause of action alleged. The allegations and statements are, that the meadow land in question, " being thoroughly drained and dry," the defendant made " an opening through the causeway or roadbed of its railroad " and thereby caused the " tide water from the Hackensack river" to be discharged upon the meadow lands aforesaid, &c. It is impossible, from such a narration, for the court to pronounce that a wrong in this matter has been committed by the railroad company. There is not even an averment in the count that, by reason of the natural situation, or of any grant to that effect, the plaintiff has the right to require that the roadway of the defendant shall keep off this water from her land. In the natural condition of affairs, a landowner has the right to remove, either in whole or in part, any structure that he has erected upon his property, although such removal will prove detrimental to the possessions of others. The cutting complained of does not appear to be an actionable wrong.

The fourth count we regard as also insufficient, on the same ground.

The second and third counts are somewhat variant from the two just disposed of. They each, in substance, aver, that the meadow land in question had been dry and drained for a number of years, and that the defendant kept and maintained a ditch alongside its roadbed, and thereby caused the water of the Hackensack river aforesaid to be discharged through said

ditch last aforesaid and through an opening through · said causeway or roadbed upon the said meadow lands, &c.

These counts, we think, are also essentially defective. Neither of them shows, with such reasonable certainty as the laws of pleading require, that, by doing the act stated, the defendant has committed a tort. The radical defect of this pleading is, that it does not declare that the water of the Hackensack, flowing in its natural condition, would not have inundated this meadow land to the same or to a greater extent than is now the case by reason of the ditch complained of. It does not appear that this act of the defendant has, to the injury of the plaintiff, altered the natural condition of the land. To elucidate, let us suppose this case: That the river water naturally would overflow this meadow; that the defendant prevented such overflow by building an embankment on its own land, and that subsequently it cut a ditch along and through such structure and thereby let in as much water as had originally overflowed the property of the plaintiff; it is obvious that such a course of conduct would not have laid any ground of action, and yet, for aught that appears in these counts, the defendant may have done nothing more than the things above supposed. These counts, taken at their best, merely evince that, by possibility, the plaintiff may, in this matter, have a cause of action; of course such a statement is radically defective.

The remaining counts, the fifth and sixth, were intended by the pleader to be placed on a different basis. Their narration, in effect, is this: That the meadow of the plaintiff was a part of a large tract, and, on the 2d of March, 1848, the owners of such lands became incorporated by an act of the legislature of that date, with power to improve said tract " by building and erecting bridges, banks, dams and sluices, and digging, clearing out and opening ditches for draining the same, and which act was accepted and approved by all the owners of lands lying within the limits of said tract." Then follows this statement, viz.: "And whereas the defendant herein had, in the course of erecting that portion of its railway known as

the Boonton branch, divided the said tract of meadow land into two distinct portions by a solid embankment or causeway extending from the upland to the Hackensack river, and had thereby also changed and altered the course of Kingsland creek by filling and obstructing the bed thereof as it naturally ran in two places within the limit of the said tract of land, and near the mouth or outlet of the said creek into the Hackensack river, and connecting those portions of said creek lying on the southerly side of the said railroad by a ditch, and had connected that portion of the said creek lying on the northerly side of the said railroad, and by it entirely cut off from those portions of said creek lying on the southerly side of said railroad, with the Hackensack river by a ditch, and had continued said ditch up to the highland, whereby large quantities of overflow or tide water were brought into and upon the meadow lands lying on the northerly side of the said railroad which theretofore had not come thereon, which waters were prevented from being discharged on the meadow lands lying on the southerly side of said railroad by the embankment of said railroad."

The count then avers that "the defendant and others being the owners of meadow lands lying on the southerly side of said railroad, for the purpose of protecting said meadow land lying on the southerly side of said railroad from such overflow or tide water, applied to the legislature on the 21st March, 1874, and obtained a supplement to the act of incorporation already mentioned, whereby it was, among other things, ordained "that it shall not be lawful to make any opening through the causeway or roadbed of the Boonton branch of the Morris and Essex Railroad Company, whereby any overflow or tide water from the meadows lying beyond the same shall be discharged upon the meadow land, bounded," &c.

The breach alleged is that the defendant, in violation of this legislative provision, made an opening through its roadway and thus let the water into the meadow of the plaintiff.

The principal problem presented by this state of facts, and which has been somewhat, though not fully, discussed by counsel, is whether an act of legislation, passed at the instance of a landowner, can, *proprio vigore*, impose a permanent servitude upon his land, and which, at the instance of a party to be benefited by it, will be enforced in a court of law, the plaintiff claiming that from this mandate of the legislature the defendant owes to her the duty of refraining from making or permitting any opening, at the point in question, in its roadway admissive of this water.

Unfortunately, the pleading in this, as in most other respects, is so inartistically drawn that the legal relationship of these litigants is left in the utmost obscurity. It does not appear that the plaintiff, or any one in privity of title with her, was one of the original corporators, the averment in this respect being that the then owners of the land became the incorporators; but we cannot know that she holds derivitively from any such owner, for she may be invested with a superior title, as of an estate devolving from a mortgage prior to such owner. Nor can it be seen that she, or any person under whom she claims, had anything to do with the supplement to such charter, so that there is no reason for the belief that on her side there has been anything in the form of an obligation imposed on her or her lands, the result being, as the case stands, that if the defendant owes her a duty inherent in this transaction it is an absolutely gratuitous one. Nor, on the other hand, does it appear that the defendant had any interest under the charter, or that it had any lands to be improved under its provisions. In all these important respects these counts are silent.

While, therefore, it might be difficult, if not impossible, to find a stable ground for holding that a legislative act passed with the assent of a landowner, placing a perpetual burthen upon his land, will be enforceable at law, nevertheless it does not seem to be difficult to say that such a burthen can be enacted only by those who are parties, personally or by derivation, to the scheme of which it was a part. In the present

instance, assuming the statutory commandment that there should be no opening in this roadway to be legal, it would appear to be clear that it will create a benefit in favor only of those who are its objects—that is, the corporation itself or its members. The plaintiff, as has been shown, does not stand in that category. She was not and is not, so far as appears, a corporator, and therefore is not bound by the burdens imposed by the corporate act, and again, therefore, cannot claim any of its benefits. Consequently, the question whether if the plaintiff and defendant had both been the promoters of this legislation how it would have affected their legal rights, is an abstract one, which it is not at present necessary to decide.

But while the plaintiff, in the attitude in which she is placed by this pleading, cannot sustain this suit on the ground of the legislation referred to, it seems that she may do so by reason of the presence in these counts of certain statements, although such statements were obviously intended to be mere auxiliary to the cause of action prominently relied on. The facts here indicated are those contained in the extract from these counts already recited, to the effect that years ago the defendant by its embankment "changed and altered the course of Kingsland creek by filling and obstructing the bed thereof as it naturally ran, &c., whereby large quantities of overflow or tide water were brought into and upon the meadows on the northern side of said railroad." This statement, in connection with the allegation that the defendant has now made an opening in its roadway, through which the water so illegally diverted comes upon the meadows of the plaintiff, we think exhibits an actionable wrong.

With regard to these two counts the demurrer will not hold; as to the other counts it is sustained.