BRIGGS ET AL., APPELLANTS, v. GREAT NORTHERN RAIL-WAY CO., RESPONDENT.

(No. 6,941.)

(Submitted September 22, 1932.    Decided October 27, 1932.)

[15 Pac. (2d) 840.]

*Mr. John F. Duffy,* for Appellants, submitted a brief.

*Messrs. Clift & Glover* and *Messrs. Walchli & Korn,* for Respondent, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiffs have appealed from a judgment entered for defendant after the court had sustained a general demurrer to the second amended complaint.

The sole question is whether the complaint states a cause of action. It is alleged that the Minneapolis & St. Cloud Railroad Company, now the Great Northern Railway Company, originally constructed its transcontinental railroad by way of Smith and Pleasant valleys between the stations of Columbia Falls, in Flathead county, and Jennings, in what is now Lincoln county, over which it operated its trains from the month of January, 1892, until the first day of October, 1904, when it ceased to operate its main line between Columbia Falls and Jennings; that on October 1, 1904, it changed the location of its railroad between Columbia Falls and Jennings northwesterly to within 9 miles of the international boundary between the United States and Canada, thereby departing a distance of more than 50 miles from the general route prescribed in its articles of incorporation; that defendant's acts in thus changing the location of its road were contrary to and in direct violation of sections 894 and 898 of the Civil Code of

Montana of 1895, now sections 6507, 6512, Revised Codes of 1921; along the original line there were certain stations, including Kalispell and Marion; at different times between the 1st of October, 1904, and the close of the year 1908, defendant removed from the roadbed the rails and cross-ties on that part of the railroad operated as the original main line from Jennings to a point about 4 miles west of Marion in Flathead county, which point is 27 miles west of Kalispell and 42 miles west of Columbia Falls; that at all times since October 1, 1904, the defendant has operated the line from Columbia Falls to Kalispell and the line from Kalispell to Marion and 4 miles beyond as a branch line feeding the main line at Columbia Falls; that the defendant continued to operate the line running four miles west of Marion for freight up to the 8th of August, 1930, when it pulled up and removed from the roadbed all the rails from Marion west, and has ever since ceased to operate that part of the line for any purpose whatever.

It is then set forth that, in the year 1925, the plaintiffs owned 167.82 acres of timber land 4 miles west of Marion near the west end of the track operated for freight traffic from 1908 to 1930, as aforesaid, and at said time, evidently meaning 1925, plaintiffs were induced by defendant to install a loading dock on defendant's right of way near the land of plaintiffs, and to pay rent for the loading dock, and to pay the cost of installing a "De-rail," all for the purpose of loading railroad ties, poles and cordwood cut and manufactured from plaintiffs' lands; and that by reason of the inducements of the defendant in installing the "De-rail," and its duty to accept and transport timber and products manufactured by plaintiffs, and to be loaded at the dock, plaintiffs enlarged their timber manufacturing plant and bought another 160 acres of timber land adjacent to the original tract, of the reasonable value of $4,500. From the additional land merchantable ties, poles and cordwood could be manufactured; until at the time of the pulling up of the rails from the 4 miles of road between Marion and the loading dock, on the 8th of August, 1930, plaintiffs

had physical property in timber lands, a manufacturing plant and equipment of the value of $10,000; that by reason of the acts of defendant in abandoning its 4 miles of track west of Marion, plaintiffs will be obliged to haul their timber products a distance of 4 miles farther to a shipping point at Marion, thereby reducing the value of plaintiffs' property to their damage in the sum of $2,500, for which sum plaintiffs pray judgment.

The complaint does not state a cause of action. So far as appears therefrom the alleged unlawful act of defendant in changing the main line of its railroad occurred more than twenty years before plaintiffs became the owners of their original tract of land, or had any business transactions with the defendant. Surely, one who is not injured nor affected in any way or in any degree by the violation of a statutory duty cannot maintain an action for damages predicated upon its violation. That is plaintiffs' situation in this case.

When plaintiffs erected the dock, caused the ''De-rail'' to be installed, and began to carry on their timber business, they did so in view of the fact that the railroad from Marion west for 4 miles was, and had been for many years, a freight line. If they were injured by the actions of the defendant, it was not by the change made in 1904, but by abandonment of the line west of Marion in 1930.

It is not alleged in the complaint that the defendant proceeded without authority in abandoning the line from Marion west in 1930, and it will not be presumed that it was abandoned unlawfully.

It will be supposed that plaintiffs have stated their cause as strongly as they can. (*Awbery* v. *Schmidt*, 65 Mont. 265, 211 Pac. 346; *Conrad Nat. Bank* v. *Great Northern Ry. Co.*, 24 Mont. 178, 61 Pac. 1.)

Plaintiffs do not allege that there was any contract existing between them and the defendant. Their allegation that they were induced to install a loading dock on defendant's right of way and to pay rent therefor without any further pleading of fact, does not justify the inference that de-

fendant was obliged to continue the maintenance of the track there. These allegations and those respecting the purchase of additional land, and the enlargement of their plant, amount to no more than assertion that plaintiffs were justified in believing and expecting that defendant would continue to maintain its railroad west of Marion and to afford plaintiffs the facilities then existing. That this is so is confirmed by their brief, in which their counsel says: "Plaintiffs were justified in 1925 in making the investments in additional timber land and in enlarging their plant on the assumption that defendant would not further violate the law by removing the said four miles of track serving their interest." The mere fact that persons have made substantial improvements along a railroad in the expectation of its continued operation does not burden the railroad company with an implied obligation to operate. (*Brownwood North & South Ry. Co.* v. *Railroad Commission of Texas,* (D. C.) 16 Fed. (2d) 297.)

The plaintiffs here do not make as strong a showing as did the plaintiff, who failed, in *Helena & Livingston Smelting & Reduction Co.* v. *Northern Pacific Ry. Co.,* 62 Mont. 205, 23 A. L. R. 546, 204 Pac. 370, 374. In that case this court quoted the following from the opinion in *Detroit* v. *Michigan Central Ry. Co.,* 156 Mich. 121, 120 N. W. 592: "If the railroad company considers that the transportation of the product of the manufacturer will compensate it and yield it a profit, it usually, upon request, puts in the necessary side track and switches. By the construction of such a track at the request of one and the assent of the other, no contract is implied binding either to the continuance of such arrangement for any specified time. Clearly the manufacturer has made no contract by which he is liable to the railroad company in damages for discontinuing its shipment at any time or for any reason. He may move his plant within a month after the construction of the side track. He may conclude to ship his goods to market by other railroads or by other routes. I am not aware that any claim was ever made that the manufacturer is bound by such an arrangement to ship his goods over

the one railroad. Neither can a contract be implied on the part of the railroad company to maintain the side track and ship the goods of the manufacturer at a loss or without profit." Continuing, this court said: "It seems to us clear that the ·question of removal or abandonment by a railway company of its track is a matter of public concern, and, in so far as the rights of the public may enter into it, just so far may the rights of an individual as a member of the public be considered. When there is no substantial damage to the individual, aside from that which may occur to all other members of the public, although differing in the degree of the damage, there cannot be any right of action to recover damages by reason of the removal or abandonment of the road, unless it may be in a case in which there is an express contract governing the relations of the parties as hereinbefore expressed." (See sustaining authorities in the note to the case, 23 A. L. R. 556 et seq.)

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS, HONORABLE JEREMIAH J. LYNCH and HONORABLE JOHN HURLY, District Judges, sitting, respectively, in place of JUSTICES GALEN and FORD, disqualified, concur.