HECKAMAN, Respondent, *v.* NORTHERN PACIFIC RAIL-
WAY CO., Appellant.

(No. 6,963.)

(Submitted September 23, 1932. Resubmitted January 7, 1933. Decided
January 30, 1933.)

[20 Pac. (2d) 258.]

366

*Mr. C. H. Loud, Mr. C. J. Dousman* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted an original and a reply brief; *Mr. E. M. Hall* argued the cause orally.

368

*Mr. Thomas C. Colton, Mr. Denzil R. Young* and *Mr. H. L. Maury,* for Respondent, submitted a brief; *Mr. Colton* and *Mr. Maury* argued the cause orally.

372

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment awarding M. C. Heckaman damages for losses suffered when, on June 7, 1929, his place of business in Wibaux was flooded by reason, as he alleges, of the insufficiency of the openings in the embankment maintained by the Northern Pacific Railway Company, to permit the passage of the flood waters of Beaver Creek.

The Northern Pacific Railroad was built through eastern Montana in 1880, and passes through Wibaux from east to west crossing Beaver Creek at right angles within the corporate limits. The stream, normally but 3 or 4 feet in width, flows from south to north through a channel capable of carrying a large volume of water and defined by banks approximately 5 feet above the level of the center of the stream, on each side of which are benches gradually rising to an elevation of about 5 feet higher than the banks of the present channel. The town is built upon ground approximately 15 feet above the center of the channel of the stream, whose valley is 4,000 feet in width. To the west of the town the ground rises sharply to form what is known as Beaver Hill.

Beaver Creek drains an area of 342 square miles above Wibaux and in this area has approximately twenty tributaries; this area is hilly, broken, practically barren of trees, dry and arid, and, consequently, is subject to torrential rains locally known as "cloudbursts."

Starting at the eastern edge of the valley the railroad embankment was constructed on an upgrade to cross Beaver Hill without tunneling, and, where it intersects the channel

of Beaver Creek, it had an elevation of nearly 15 feet; here a "pile trestle," 137.4 feet long, was constructed, not necessarily because of the necessities of the stream, but rather for economy and speed in completing the line.

· In 1884 the central piles were removed for a space of 44 feet and a "Howe Truss Span" installed, at which time the track was raised about 3 feet to lessen the grade at Beaver Hill. In 1896 this span was replaced by a 70-foot steel bridge with 20-foot approaches, all set on concrete piers, and by 1898 the space, diagonally, from the bottom of the bridge piers to the top of the approach piers was filled in and the surface "rip-rapped" and the spaces under the trestle to the east and west were filled in solid. Thus, since 1898 the embankment crossing the stream has been pierced by an opening 65 feet in width at the bottom, and something over a hundred feet in width at the top, and 15 to 20 feet in height.

In 1912, on demand of the citizens of Wibaux for relief from the danger of a grade street crossing, the defendant constructed a viaduct on Wibaux Street, the main street of the town, 35 feet wide at the bottom and 70 feet wide at the top, the roadbed of which was 9 feet above the level of the center of the channel of Beaver Creek. While not intended for that purpose, the viaduct formed a spillway for flood waters not accommodated by the bridge opening.

During the early morning hours of June 7, 1929, the watershed of Beaver Creek suffered four or five practically simultaneous "cloudbursts" at points ranging from 5 to 25 miles above Wibaux; the ensuing flood swept away fences and buildings, destroyed a vast amount of property, and drove families from their homes. At points far above Wibaux the flood came down Beaver Creek in a veritable "wall of water." At a point a mile and a half above the town, the stream head was 2,040 feet wide and 13 feet deep at the center.

The openings in the embankment were insufficient to permit this vast amount of water to pass down the channel; reaching the embankment it steadily rose until 4 or 5 feet deep in the viaduct, and finally inundated the town. The floor of plaintiff's place of business was 15 feet above the bottom

of the creek channel; the flood waters stood more than 5 feet deep in the building. This condition was not relieved until six hours later when the pressure of the water carried away large sections of the embankment and it passed down the channel; the surface of the water then sank "like an elevator going down."

Figuring the volume of water at a cross-section above the town and a like cross-section at plaintiff's building, an expert for the defendant declared that, had no embankment existed, the water would have stood 18 inches in plaintiff's building, thus conceding that the water was raised more than $3\frac{1}{2}$ feet by reason of the maintenance of the embankment.

The complaint alleges that in May and June of almost every year, to the knowledge of the defendant, Beaver Creek rose in its flow and volume to several thousand times its usual flow and would usually rise "right to its flood plane, i. e. the valley level at Wibaux," and that, in the exercise of reasonable prudence, the defendant would have known, and did know, that, in all human probability, a flood the size of that which did occur, would come; that the bridge opening was reduced less than the width of the ordinary channel of the stream and was insufficient to permit the free flow of water "in ordinary seasonably recurring high water"; and that, on determining these facts, it was the duty of the defendant to widen the opening, which duty it failed to perform.

The defendant interposed three defenses: That, as the embankment had existed since 1898 in the condition it was in at the time of the damage, the negligence charged dated back to the time of construction, and plaintiff's action was barred by the statute of limitations; that, as plaintiff acquired his property with knowledge of the existence of the embankment, he cannot recover; and, third, that the flood of 1929, was unprecedented, an act of God, for which defendant could not be held liable.

These questions were urged on motion for judgment of nonsuit, on motion for a directed verdict, and on motion for a new trial, and are here presented by proper assignments of error.

1. The solution to the first and second questions is found in ▮ the answer to the question, When did plaintiff's cause of action accrue?

The time when a cause of action for injury to real property is deemed to accrue becomes material in two connections: First, as bearing upon a right to bring the action where a change of ownership by sale or devolution intervenes between the cause and the effect; and, second, as fixing the point from which the statute of limitations is to be measured, the principle in both classes of cases being, of course, identical. If the cause of action accrued upon the construction of the embankment and bridge, it was because some damage then resulted to the land therefrom, and it follows that then the plaintiff took the land in its damaged condition and at its depreciated value. (5 L. R. A. (n. s.) 379, note; and see *Briggs* v. *Great Northern Ry. Co.*, 92 Mont. 463, 15 Pac. (2d) 840.) If no cause of action arose upon the construction, it was because the land was not then damaged, and, hence the plaintiff took it free from any right of the defendant to invade his legal rights in the property. (*New York, C. & St. L. R. Co.* v. *Hamlet Hay Co.*, 149 Ind. 344, 47 N. E. 1060, 1061, 49 N. E. 269.)

The alleged obstructions were of long standing and permanent in character. According to plaintiff's evidence, they constituted a potential danger, but plaintiff's property was not damaged until 1929. The construction of the embankment and bridge was not unlawful and did not constitute an invasion of the rights of the owner of the land later acquired by the plaintiff; the invasion occurred only by reason of the increased flow of the stream in 1929 when, for the first time, plaintiff's land was flooded. Under the circumstances shown, no action could have been instituted until injury had been suffered, the general rule being that, when the act or omission constituting negligence causes direct or immediate injury, the action accrues from the time of doing the act, or negligently failing to act; but where injurious only in its consequences, as in the case at bar, the cause of action accrues only at the time of the consequential injury and the statute of limitations begins

to run from that time. (*Kelly* v. *Pittsburgh etc. Ry. Co.,* 28 Ind. App. 457, 63 N. E. 233, 91 Am. St. Rep. 134; *Savannah, A. & M. Ry. Co.* v. *Buford,* 106 Ala. 303, 17 South. 395; *Ft. Worth etc. Ry. Co.* v. *Speer,* (Tex. Civ. App.) 212 S. W. 762.)

The case of *Ridley* v. *Seaboard etc. R. Co.,* 118 N. C. 996, 24 S. E. 730, 32 L. R. A. 708, discusses and distinguishes the type of cases cited by the defendant, and 'the instant case. Other cases wherein a railroad embankment caused overflow by reason of insufficient culverts, and the like, are found in a note in 5 L. R. A. (n. s.) 381.

The statute of limitations did not begin to run against plaintiff's alleged cause of action until his property was injured by the flood of 1929, and, as no cause of action accrued prior to the time he acquired the property, he did not take it subject to any right acquired by his predecessor or in a damaged condition by reason of the undoubted right of the defendant to maintain its embankment as constructed at a prior date. (*Mississippi & T. R. Co.* v. *Archibald,* 67 Miss. 38, 7 South. 212; *Lohmiller* v. *Indian Ford W. P. Co.,* 51 Wis. 683, 8 N. W. 601; *Omaha & R. Valley R. Co.* v. *Standen,* 22 Neb. 343, 35 N. W. 183; *Sherlock* v. *Louisville, N. A. & C. R. Co.,* 115 Ind. 22, 17 N. E. 171; *North Bend Lumber Co.* v. *Seattle,* 116 Wash. 500, 199 Pac. 988, 19 A. L. R. 415.)

2. The challenge to the sufficiency of the evidence to warrant the verdict and judgment presents a more difficult question, for the solution of which a clear understanding of the applicable law must be had.

The general rule is that the plaintiff is required to allege and prove actionable negligence; a duty owing to him by the defendant, and its breach; negligence in the construction or maintenance of the embankment which constituted the proximate cause of the damage he suffered. (*Bray* v. *Cove Irr. Dist.,* 86 Mont. 562, 284 Pac. 539; *Jeffers* v. *Montana Power Co.,* 68 Mont. 114, 217 Pac. 652; *Town of Denton* v. *Chicago etc. Ry. Co.,* 63 Mont. 70, 206 Pac. 684; *Eikland* v. *Casey,* (C. C. A.) 290 Fed. 880.)

In conformity with this general rule, the court instructed the jury to the effect that, if they found from a preponderance of the evidence that the defendant failed to use ordinary care to prevent the ordinary flood waters of the creek, or flood waters which should have been reasonably anticipated by the exercise of ordinary prudence, from backing up on to the Heckaman land and that he suffered damage which was proximately caused thereby, they should return a verdict for the plaintiff.

As the jury found for the plaintiff it must be presumed that it found that the negligence alleged in the complaint, as hereinbefore set out, was the proximate cause of the damage suffered by the plaintiff, or, under the rule applicable to special circumstances, a proximate cause thereof.

From the statement heretofore made it will be seen that the openings in defendant's embankment proved to be wholly inadequate to accommodate the flood waters of June 7, 1929, but that fact alone is not sufficient to justify such an implied finding.

A railroad corporation is authorized by law to construct and maintain embankments and bridges across waterways of all kinds, as a matter of necessity (sec. 5, Art. XV, Constitution of Montana; sec. 6507, subd. 5, Rev. Codes 1921), and "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." (Sec. 8645, Id.) If so constructed and maintained as not to constitute a nuisance *per se,* the embankment was not negligently constructed.

However, it was the primary duty of the defendant corporation, under the common law, in the construction of its embankment, "to make sufficient and proper provision for the passage of the waters of the stream, and to that end it was required to bring to the planning and execution of the work the skill and knowledge which are ordinarily practiced in such matters, and to construct it so as to allow for the passage of such water as was known to flow in the stream in times of usual freshets and such as might have rea-

sonably been expected to in floods which are not usual, but which experience shows might occur at any time. (2 Farnham on Waters, sec. 569; 13 Am. & Eng. Enc. Law, 2d ed., 690; *Jones* v. *Seaboard Air Line Ry. Co.*, 67 S. C. 181, 45 S. E. 188.)'' (*Price* v. *Oregon Ry. Co.*, 47 Or. 350, 83 Pac. 843, 844.)

This common-law duty is crystallized into statutory form in this state. Section 6507, above, declares that ''the corporation shall restore the stream or watercourse * * * or flume thus intersected to its former state of usefulness, as near as may be, or so that the railroad shall not unnecessarily impair its usefulness or injure its franchise.'' (Subd. 5.)

The usefulness or ''franchise'' of the ordinary non-navigable ▮ stream is its use for irrigation purposes and drainage.

The plaintiff contends that, as subdivision 5 of section 6507, ▮ above, authorizes the railroad corporation to construct its road across a stream ''in such manner as to afford security for life and property,'' on such construction the corporation becomes an insurer. In taking this position reliance is placed upon the following statement found in the opinion in *New York etc. Ry. Co.* v. *Hamlet Hay Co.*, above, with respect to a like statute: ''The 'life and property' and the 'franchises' referred to * * * are not those of the railroad corporation, but those connected with the 'stream'; * * * so far as the corporation's own property and franchises, and the safety of its employees and passengers, are concerned, the statute was intended to make no provision.'' This statement is not warranted by the wording of the statute.

The terms ''life'' and ''property'' are found in the grant of authority to construct the railroad line across streams, etc., the provision being that the line may be constructed ''in such manner as to afford security for life and property.'' This provision clearly requires the construction of the railroad across streams in such manner as to render it safe for the carriage of persons and property, regardless of the fact that it may, to some extent, interfere with the usefulness of the

watercourse. (See *Vyse* v. *Chicago etc. Ry. Co.*, 126 Iowa, 90, 101 N. W. 736, and cases cited.)

Protection for life and property along the course of the stream is provided by the requirement of restoration of the stream to its original usefulness as near as may be. If the first provision were intended to afford this protection, the statute would make the railway corporation an insurer in this regard, and, if the legislature had intended any such result, it would undoubtedly have said so in no uncertain terms. This would perhaps be the result were it not for the statutory authority granted to railroad corporations, as neither individuals nor private corporations, without legislative authority, may interfere with running streams to the damage of others, whether negligent or not, without being liable for the damage done (*Lewis Township Imp. Co.* v. *Royer*, 38 Ind. App. 151, 76 N. E. 1068); but where, as here, a railroad corporation acts under statutory authority, it is not an insurer against damage, but is liable only for failure to exercise the required skill and care to avoid causing injury; in other words, liability attaches only upon a showing of negligence. (*Cleveland etc. Ry. Co.* v. *Wischart*, 161 Ind. 208, 67 N. E. 993; *Wallace* v. *Columbia & G. R. Co.*, 34 S. C. 62, 12 S. E. 815; *Powers* v. *St. Louis etc. Ry. Co.*, 71 Mo. App. 540; *Koch* v. *Delaware, L. & W. Ry. Co.*, 54 N. J. L. 401, 24 Atl. 442; *Bellinger* v. *New York Cent. Ry. Co.*, 23 N. Y. 42.)

Acting under such authority, but in duty bound to restore the stream to its original usefulness, if the railroad corporation fails to meet this latter requirement, such failure constitutes actionable negligence. (*Graham* v. *Chicago, I. & L. Ry. Co.*, 39 Ind. App. 294, 77 N. E. 57, 1055.)

Within the meaning of statutes such as that under consideration, the "watercourse" is defined as a channel cut by running water, with well-defined banks through which water flows for substantial periods of each year. (*New Jersey, I. & I. R. R. Co.* v. *Tutt*, 168 Ind. App. 205, 80 N. E. 420.)

The statute, however, does not require that the full width of the channel be left open, but only that the watercourse

be restored to its original usefulness as near as may be. The history of the stream may demonstrate that the channel is, in part, obsolete and has no usefulness, and, though the channel may be somewhat narrowed by the construction, it may be so straightened and deepened as to carry as much water as it did originally. (*William Tackaberry Co.* v. *Simmons Warehouse Co.*, 170 Iowa, 203, 152 N. W. 779.) The duty in this regard is clearly expressed in the statute and cannot be added to by the courts. (*State ex rel. Morris* v. *Hannibal Ry. Co.*, 86 Mo. 13; *City of Moundsville* v. *Ohio River Ry. Co.*, 37 W. Va. 92, 16 S. E. 514, 20 L. R. A. 161.)

The evidence is to the effect that in recent years, acting with the town authorities, the bed of the stream was straightened and deepened, which would, undoubtedly, give the bridge opening a greater capacity than it had theretofore; but the evidence does not disclose as to whether or not such improvement did restore the stream to its original usefulness.

Again, this duty of restoration is not discharged by the ▇▇ exercise of reasonable care and skill in the initial construction; if the original opening be thereafter narrowed, or if subsequent experience proves that the opening is not sufficient to carry away waters which may be reasonably anticipated, suitable provision for such waters must be made within a reasonable time. (*City of Moundsville* v. *Ohio River Ry. Co.*, supra; *Lake Erie & W. Ry. Co.* v. *Smith*, (C. C.) 61 Fed. 885; *Riddle* v. *Chicago etc. Ry. Co.*, 88 Kan. 248, 128 Pac. 195; *Dahlgren* v. *Chicago, M. & P. S. Ry. Co.*, 85 Wash. 395, 148 Pac. 567.)

If a railroad corporation, in the construction and maintenance of its grade, bridges and culverts, has fully discharged the duty heretofore outlined, yet damage results from the insufficiency of the openings to carry away waters which come to it as the result of an unprecedented storm and consequent flood, there is no liability, as the necessary element of negligence is lacking. (*William Tackaberry Co.* v. *Simmons Warehouse Co.*, above; *Louisville & N. Ry. Co.* v. *Conn*, 166 Ky. 327, 179 S. W. 195; *Chicago etc. Ry. Co.* v. *Turner*, 141

Okl. 267, 284 Pac. 855; *Alt* v. *Chicago etc. Ry. Co.*, 96 Neb. 714, 148 N. W. 900.) This is the only reasonable rule under such circumstances, for the term "unprecedented" means "novel, new, unexampled" (Webster's New Int. Dict.); an act of God which no one can anticipate or guard against (*Lyon* v. *Chicago etc. Ry. Co.*, 45 Mont. 33, 121 Pac. 886, 889; *New Brunswick Steamboat & Canal Transp. Co.* v. *Tiers*, 24 N. J. L. 697, 64 Am. Dec. 394; *The Majestic*, 166 U. S. 375, 17 Sup. Ct. Rep. 597, 41 L. Ed. 1039; *Tompkins* v. *Dutchess of Ulster*, 24 Fed. Cas. 32, No. 14087a; *Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197).

The contention of counsel for defendant that, as the defendant is only required to guard against floods reasonably to be anticipated, no liability can result from injury suffered, by reason of an unprecedented storm, regardless of the defendant's negligence, is supported by the cited cases of *Kansas City, P. & G. Ry. Co.* v. *Williams*, 3 Ind. Ter. 352, 58 S. W. 570, and *Harris* v. *St. Louis-San Francisco Ry. Co.*, 224 Mo. App. 455, 27 S. W. (2d) 1072. However, in each opinion the court pointed out that the damage on which the action was predicated would have been as great had the defendant railway company been guilty of no negligence, which finding would have been a complete defense under all of the authorities. The *Williams Case* was cited with approval in *Lyon* v. *Chicago etc. Ry. Co.*, above, but only on the proposition that, if the damage is wholly the result of an act of God, the question of negligence on the part of the defendant corporation becomes immaterial.

The rule in this jurisdiction is that, where damages are claimed for injuries resulting from one of two causes, for one of which the defendant is responsible, the plaintiff must fail if his evidence does not show that the damage, in whole or in part, was produced by that cause; but where the one is the act of God and the other the culpable negligence of the defendant, the defendant is liable for such loss as was caused by his own act concurring with the act of God. (*Raish* v. *Orchard Canal Co.*, 67 Mont. 140, 218 Pac. 655.) "If an act of God alone

would not produce injury, but, assuming there was an act of God, a plaintiff's loss is made possible by reason of a prior, coincident or subsequent negligent act of a defendant, the latter is liable, because his act is *causa sine qua non.*" (*Lyon* v. *Chicago etc. Ry. Co.,* above; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *A. M. Holter Hardware Co.* v. *Western Mortgage & Warranty Title Co.,* 51 Mont. 94, 149 Pac. 489, L. R. A. 1915F, 835; *Walsh* v. *East Butte Copper Min. Co.,* 66 Mont. 592, 214 Pac. 641; *Jacksonville etc. R. Co.* v. *Peninsular Land etc. Co.,* 27 Fla. 1, 157, 9 South. 661, 17 L. R. A. 33, 65, and notes; 16 Am. St. Rep. 250, note.)

In the case of *William Tackaberry Co.* v. *Simmons Warehouse Co.,* cited above, it is said that where those building a bridge are negligent and the damage of which complaint is made would not have been suffered had it not been for that negligence, the fact that the flood which caused the damage was unprecedented is no defense.

In determining the sufficiency of the evidence to warrant a verdict, in compliance with the rules of law determining liability, heretofore stated, we are bound by the rule that the jurors are the triers of the facts, and, therefore, a verdict cannot be disturbed if there is, in the record, substantial evidence on which it may be sustained. (*Harrington* v. *Mutual Life Ins. Co.,* 59 Mont. 261, 195 Pac. 1107; *Ball* v. *Guessenhoven,* 29 Mont. 321, 74 Pac. 871; *White* v. *Barling,* 41 Mont. 138, 108 Pac. 654; *Cohen* v. *Clark,* 44 Mont. 151, 119 Pac. 775.)

Testimony concerning high-water periods in 1904, 1907, 1912, 1914, 1916, 1921 and 1925 was introduced, and it was conceded that the nature of the terrain and climatic conditions within the watershed of Beaver Creek and the surrounding territory rendered that portion of the state subject to violent torrential rains commonly called "cloudbursts." These storms usually occurred singly, but the cause of the havoc of June 7, 1929, was that a number of these storms centered within the watershed of Beaver Creek at approximately the same time.

The record contains evidence to the effect that, in the upper watershed of Beaver Creek, the flood of 1907 was higher, and that of 1904 was nearly as high as that of 1929. Many reputable citizens testified that, again and again, during the period of 1898, when the bridge opening was narrowed, to 1921 when the first so-called unprecedented flood descended upon Wibaux, the waters backed up the stream for hundreds of feet to the south—in 1916 to a distance of 1,200 feet above the town—because of the inadequacy of the bridge opening. As one witness expressed himself: "The usual action of Beaver Creek was that it came to the railroad bridge, dammed up, took a horseshoe circle around the town, came from the west and from the east and then passed through the viaduct." Another witness said: "Any freshet or rain would usually cause high water there; * * * it could not get through the railroad bridge fast enough, so it would back up." Another witness testified: "What drove the water up that way was not a wide enough bridge to carry the water through at the railroad track in the main channel."

R. A. Lyman, an engineer employed by the plaintiff to investigate conditions, testified that, considering the history of the vicinity for enormous storms and the features of the watershed, he did not consider the bridge sufficient; that he did not believe that the railroad engineers "used good judgment"; and that, in their places, he would not feel that he was doing right by his employers and the public by "taking the chances they took."

There is evidence in the record showing that a group of citizens met Mr. Rapelje, the general manager of the Northern Pacific System, and explained to him the needs of Wibaux with reference to the railroad embankment. One of this group was permitted, without objection, to testify that, after Mr. Rapelje had agreed to install a small viaduct for the safety of school children, he said that the company could not do anything at the time "as to the bridge over the creek," as the plan was to raise the track there "in the near future" when "we will give you a full width bridge here." The witness testified that the

conversation was had in 1919. This evidence, if believed by the jury, justified the inference that the defendant company recognized that the bridge opening was not as wide as it should be.

The law governing in such a case as this was brought home to the defendant in a case arising at Dickinson, North Dakota, in 1914. (*Soules* v. *Northern Pac. Ry. Co.,* 34 N. D. 7, 157 N. W. 823, L. R. A. 1917A, 501.)

This brings us down to the Wibaux flood of 1921, which was described as "a great flood" and was said by the district judge to have, perhaps, been unprecedented up to that time; the waters thereof inundated the town with the exception of a block or a block and a half in the business section, yet it was but the "tail end" of a series of torrential rains which, fortunately for the inhabitants of Wibaux, extended east and west along the line of defendant's road, causing great damage at Yates, Beach, North Dakota, and other points east of Wibaux within an area greater than that of the north and south series of rains on June 7, 1929. The flood at Beach resulted in an action, and judgment, against this defendant, and it must be assumed that the officers of the defendant company were thoroughly familiar with the fact that the territory round about Wibaux was subject to these violent tempestuous storms or cloudbursts. (*Everetts* v. *Northern Pac. Ry. Co.,* 50 N. D. 894, 198 N. W. 685.)

Conceding that the storm of 1921 was "unprecedented" and might not, under the authorities cited by counsel for defendant, be notice that a like or greater storm might thereafter occur, the evidence epitomized above is sufficient to warrant the finding that the openings in the embankment were, to the knowledge of the defendant, insufficient to permit the waters of Beaver Creek "in ordinarily recurring high water" to flow down the natural channel of the creek, and, consequently, establishes the violation by the defendant of the mandate of section 6507, above, in that the defendant did not restore the stream to its original usefulness, as near as may be.

. This antecedent and concurrent negligence is shown, and, as above pointed out, the evidence clearly shows that the damage done the plaintiff was "in whole or in part," and perhaps wholly, due to this negligence. It follows that the fact that the flood of 1929 was unprecedented is no defense, and the verdict and judgment are warranted by the evidence.

3. Error is predicated upon the court's refusal to give the following offered instruction: "Before the plaintiff can recover against the defendants, the plaintiff must prove that a proximate cause of the damage to plaintiff's property was the negligence of the defendants; it must appear from the evidence that the damage was the natural and probable consequence of the negligence of the defendants and that said damage ought to have been foreseen by the defendants in the light of the attending circumstances. The first requisite of a proximate cause is the doing or omitting to do an act which a man of ordinary prudence could foresee might naturally and probably produce the damage complained of; and the second requisite is that such act or omission did actually cause the damage. If, therefore, you find from a preponderance of the evidence that in constructing said embankment and openings therein, as they existed at the time of this flood, a person of ordinary prudence would not have foreseen the flood of June 7, 1929, or if you find that the property of the plaintiff would have been damaged had said embankment and openings therein never existed, then the construction of said embankment and openings, as the evidence shows the same existed, was not a proximate cause of the damage to plaintiff's property and the defendants are not liable in law."

The offered instruction is substantially a correct statement of the law, but, in so far as it is correct, it is covered fully by instructions given, and, therefore, its refusal does not constitute reversible error.

However, as other like cases are to be tried, we deem it advisable to point out certain minor defects which should be corrected, if the instruction is again offered. In the phrase "that said damage ought to have been foreseen," the

word "said" should be stricken, and in the statement of the "first requisite" of proximate cause, the word "the" before, and the words "complained of," after the word "damage" should be eliminated. One damaged is not required to show that the party guilty of negligence should have foreseen the particular damage suffered, but only that a reasonably prudent person should have foreseen that damage was likely to follow as a natural consequence of his negligent act. (*Mize* v. *Rocky Mt. Bell Tel. Co.*, 38 Mont. 521, 100 Pac. 971, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189.)

The general rule is quoted in *Reino* v. *Montana M. L. D. Co.*, 38 Mont. 291, 99 Pac. 853, 854, as follows: "It is not required that the 'specific' injury or 'such' an injury as is complained of was or ought to have been specifically anticipated as the natural and probable consequence of the wrongful act. It is sufficient if the facts and circumstances are such that the consequences attributable to the wrongful conduct charged are within the field of reasonable anticipation; that such consequences might be the natural and probable results thereof, though they may not have been specifically contemplated or anticipated by the person so causing them."

Further, under the law applicable to the facts here proven, it is not enough that "a person of ordinary prudence would not have foreseen the flood of June 7, 1929," for, as we have said, if the proved negligence of the defendant is a proximate cause of the injury, the unprecedented nature of that flood is not a sufficient defense. The instruction should be made applicable to the facts of the case.

4. The final contention meriting consideration is that the court erred in refusing to give defendant's offered instruction D–10, as amended, which reads: "If you believe from the evidence that plaintiff's property was damaged by the flood waters of Beaver Creek of June 7, 1929, and that damages thereto to some extent would have been sustained by him from such flood waters, irrespective of the presence or condition of the railway embankment and openings therein, as they existed on that date, then you are instructed that even if you

should believe further, from the evidence, that the presence or condition of the embankment and openings therein held back the water to some extent and diverted onto plaintiff's property additional water in sufficient amount to cause additional damage to plaintiff in excess of the damage, if any, that you find would have resulted irrespective of the presence of said embankment and opening, but you are unable to reasonably determine, without resorting to surmise and speculation, how much of the damage was caused by the presence and condition of said embankment and openings, as distinguished from the damage sustained from the flood waters, independent of the embankment and openings; under the circumstances, if you so find, the plaintiff is required to prove the amount of additional damages, if any, sustained by him by reason of the presence of the embankment and openings alone and the jury cannot resort to surmise and speculation in an endeavor to segregate such damages, if any, from those caused by the flood waters, irrespective of the existence of the embankment and openings.''

The principal thought contained in the proposed instruction, that is, the apportionment of damages between two independent culpable agents, or the responsibility of a culpable defendant only for such damages as are directly traceable to his negligent act, is recognized in this jurisdiction as applicable in proper cases (*Mulrone* v. *Marshall*, 35 Mont. 238, 88 Pac. 797; *Watson* v. *Colusa-Parrot Co.*, above; *Frederick* v. *Hale*, above; *Lyon* v. *Chicago etc. Ry. Co.*, above; *Walsh* v. *East Butte Copper Min. Co.*, above), but the mere fact that it is difficult to determine, in such a case, what part of the damage was occasioned by the act of the defendant and what by another agency, is not, as suggested in the proposed instruction, fatal to plaintiff's case in an action where the rule is applicable (*Watson* v. *Colusa-Parrot Co.*, above).

''If the plaintiff is entitled to damages and the defendant liable for them, the one is not to be denied all damages, nor the other loaded with damages to which he is not legally liable, simply because the exact ascertainment of the proper amount

is a matter of practical difficulty.'' The jurors ''must use their best judgment, and make their result, if not an absolutely accurate one, an approximation to accuracy.'' (*Sellick* v. *Hall*, 47 Conn. 260.)

If, in a given case, it is conceded or shown that damage would have resulted regardless of the existence of an embankment, but additional damage was suffered by reason of the negligent maintenance of the embankment, the plaintiff must produce evidence as to the amount of damage for which the defendant is liable. (*Fort Worth Ry. Co.* v. *Speer*, above.)

However, the case at bar was not tried on the theory of segregable damages. The contention of the plaintiff was that the injury, in its entirety, was caused by water backed by reason of the insufficiency of the openings in the embankment, while the defendant pleaded and asserted that the damage was caused by a veritable ''wall of water'' which swept down the creek and engulfed the town of Wibaux before it reached the embankment.

It was only in defendant's case, after all evidence as to the damage done was in, that the expert Shenehon testified that there would have been, according to his measurements, a foot and a half of water in the Heckaman place had there been no embankment, and the defendant seems to have placed no importance on the testimony. The testimony as to the actual conditions existing at the Massy place, a mile or more above Wibaux, where the relative elevation of the houses and the bottom of the creek bed correspond to those at Wibaux, but where the valley is much narrower than within the town, tends to refute this expert's computation.

It must be presumed that counsel for the defendant knew of the nature of the testimony their witnesses would give, and, had they intended to rely upon the rule of apportionment of damages, they should have interrogated the plaintiff as to the nature of goods or property which would not have been injured by a foot and a half of water and thus laid their foundation for an instruction on the subject.

Under the instructions given, the court left the jury to determine the issues from the pleadings which were submitted to them, and, having fully instructed them on the law respecting the duty of the defendant, instructed them, in effect, that in order to find for the plaintiff they must find, not only that the defendant was guilty of the negligence charged, but that plaintiff's damage was wholly due to that negligence and not due "to some other cause," thus placing a greater burden upon the plaintiff than he would be required to bear under an instruction on apportionment of damages. Had the instruction offered been a model on the subject, we think, upon the facts proven, its refusal would not have constituted reversible error; in fact, it is so prolix and profuse that, had it been given, it is doubtful if any juror could have understood it.

5. Error is also predicated on the court's refusal to give instructions covering questions of time within which the action should have been commenced, and of estoppel. The trial court having correctly ruled out the defenses of the statute of limitations and estoppel, properly refused to instruct on those defenses.

Finding no reversible error in the record, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied March 21, 1933.